CHAMBERS v. BOOKMAN.

1. ESTOPPEL.—FRAUD.—Positive acts on the part of the true owner of land which induce an innocent party to deal with it as if the title were in another, will estop him from setting up title in himself, even though he was ignorant of his title and no fraud was *actually* intended.

2. IBID.—SUBROGATION.—A MORTGAGOR can only recover possession of land sold under defective power of sale in mortgage upon payment of amount due on mortgage debt, but such mortgagor may be estopped by his actions from redeeming.

3. REHEARING refused.

Before ALDRICH, J., Richland, October, 1902.   Reversed.

Action by Mary A. Chambers against A. G. Bookman, Mary A. Bookman, Osmund W. Buchanan, D. R. Flenniken, Sarah A. Davis, J. E. McDonald, Chas. A. Douglass, Obear & Douglass, David V. Walker and Mrs. M. M. Flenniken.   From Circuit decree, plaintiff appeals.

*Mr. Wm. H. Lyles,* for appellant, cites: *Mortgage by trustee for purchase money is binding on trust estate:* 8 S. C., 48; 11 S. C., 29; 19 S. C., 241; 17 Ency., 2 ed., 9; 37 S. C., 388.   *As to estoppel by representations:* 6 Johns., 166; 27 S. C., 178; 48 S. C., 267; 42 S. C., 350; 22 S. C., 550; 11 Ency., 2 ed., 422; 19 S. C., 206.

*Mr. Halcott P. Green,* contra, for Bookman, McDonald, Douglass, and Obear & Douglass, cites: *Mortgage by trustee for purchase money is restricted to the title of the trustee:* 58 S. C., 554; *and the contract evidenced by the papers cannot be questioned by parol:* 42 S. C., 86.   *Mrs. B—— was mortgagee in possession and chargeable with rents:* 40 S. C., 413.   *Statute of limitations do not run against remaindermen until death of life tenant:* 56 S. C., 194.   *Estoppel must be pleaded:* 4 Am. & Eng. Dec. in Eq., 375; 60 Fed. R., 645; *and must be established by preponderance of evidence:* 35 S. C., 88.   *As to estoppel in pais:* 4 Am. & Eng. Dec. in Eq., 267, 323, 337, 347, 263, 286; 42 S. C., 351; Big. on Estop., 3d, 34; 13 S. C., 29; 57 S. C., 518; 139 U. S., 663; 13 S. C., 355; 108 Col., 66; 28 S. C., 38; 70 Mo., 439.

*Mr. Jas. W. Hannahan,* contra, for Walker, cites: *Mortgage by one holding limited estate is limited to estate of mortgagor:* 122 Ill., 317; 52 S. C., 464; 58 S. C., 554; 39 S. C., 39; 11 S. C., 357; 32 S. C., 215; 1 Jones on Mtg., secs. 137, 138.   *Power of sale defectively executed confers no title:* 2 S. C., 428; 19 S. C., 292; 27 S. C., 309; 36 S. C., 569; 40 S. C., 413.   *Statute of limitations do not run during life of life tenant:* 17 S. C., 53, 228; 18 S. C., 528;

28—67

59 S. C., 146, 449. *On question of estoppel:* 2 Smith's Lead. Cas., 890; 2 Pom. Eq. Jur., secs. 807, 804, 805; Big. on Estop., 431-7; 38 S. E. R., 897; 35 S. C., 93; 13 S. C., 370, 375; Big. on Estop.; 492, 493; Pom. Eq., sec. 812; 40 S. E. R., 587; 2 Pom. Eq., sec. 806; 14 Cal., 297; 38 Cal., 300; 13 S. C., 29; 15 S. C., 165; 15 Pac. R., 505; 93 U. S., 335; 31 Pa. St., 334; 118 Wall., 271; 26 Me., 530; 109 Mass., 503; 8 Ired., 83; 15 Ala., 309; 19 Fla., 371. *Failure to examine deed or mortgage to ascertain recitals is negligence:* Wade on Notice, sec. 313; 1 Story Eq., sec. 403; 12 S. C., 513; 3 Watts, 240; 4 Harris, 361.

*Mr. Robt. W. Shand,* also contra, for Davis, administrator (no citations).

The opinion in this case was filed July 15, 1903, but remittitur held up on petition for rehearing until

November 27, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. *Statement of facts:* The issue involved and the facts of the case are thus set out in the report of the master:

"The object of the action was to have an adjudication of the title to a certain tract of land situate in Fairfield County, alleged by the plaintiff to have been owned by the defendant, Mrs. Mary A. Bookman, and by her mortgaged to Mrs. Mary A. Holmes, by whom the mortgage was subsequently assigned to the plaintiff, which mortgage was foreclosed in an action in the Court of Common Pleas for Fairfield County, wherein the plaintiff in this action was plaintiff, and the defendants, Mary A. Bookman and others, were defendants. It proceeded to the point of a decree in favor of the plaintiff for the foreclosure of the mortgage and for a sale of the premises by the sheriff for Fairfield County, after the decree of the Circuit Court had been affirmed on appeal to the Supreme Court, at which sale the property

was bid off by Henry N. Obear, Esq., attorney for one Weston C. Bookman. But his bid was subsequently transferred to the plaintiff, and she was about to comply with the bid when an agreement was entered into between her and the defendant, Mrs. M. A. Bookman, for the conveyance of an interest in a certain part of the mortgaged premises to the said Mrs. M. A. Bookman. This agreement will be referred to later in this report.

"About this time it was discovered that the defendant, A. G. Bookman, claimed title to the said premises superior to the title of the defendant, M. A. Bookman, and that the other defendants to this cause claimed liens and encumbrances upon said property operative through the said A. G. Bookman. The questions before me were as to the superiority of title, and they have been fully considered. I find the following facts:

"For some years prior to 1867, and up to the 4th day of January, 1869, one Jacob Bookman, of Fairfield District, now county, was seized in fee and possession of a tract of land situate in said district, containing some 1,200 or 1,500 acres, which embraced the tract of land in question described in the complaint in this action. In 1867, Adam F. DuBard duly recovered a judgment against said Jacob Bookman for a large sum, and it was duly entered in the office of the clerk of the Court of Common Pleas for said district, now county, and State, and a writ of *fi. fa.* was duly issued to the sheriff of that county. By virtue of the *fi. fa.* so issued, L. W. DuVal, Esq., sheriff Fairfield District, now county, levied upon the tract of land in question, and a homestead being claimed by Jacob Bookman, it was set off to him, comprising the residence and forty acres of land carved out of the tract levied upon. The balance of the tract was sold, and purchased by one S. W. Bookhart, who received a deed therefor duly executed and delivered by said sheriff, bearing date the 4th day of January, 1869, which was duly recorded in the office of the register of mesne conveyences for Fairfield County. Thereafter the said S. W. Bookhart reconveyed the

said tract of land to said Jacob Bookman, by deed dated the 29th day of January, 1869, and duly recorded in the office of the register of mesne conveyances for said county and State. This deed, in consideration of $4,100, conveyed the said premises to the said Jacob Bookman in trust, for the benefit of his children upon terms specified in the deed, but I find that the trust originated in that transaction and was created by the said Samuel W. Bookhart at the instance and request of Jacob Bookman, said Samuel W. Bookhart intending to receive the full purchase price of said premises, and that the same should be secured by the mortgage hereinafter mentioned.

"On the same day, to wit: the 29th day of January, 1869, in consideration of said conveyance, to secure the entire purchase price thereof, said Jacob Bookman executed his bond to the said Samuel W. Bookhart, conditioned for the payment of $4,100, on or before the 1st day of January, 1870, with interest at the rate of ten per cent. per annum, payable annually, and compounded if not paid, and on the same day duly executed and delivered his deed of mortgage whereby he undertook to mortgage the premises in question to secure said bond of $4,100. Subsequently, nothing having been paid upon the said bond, it was assigned by said S. W. Bookhart to one Starnes, and the defendant, A. G. Bookman, who was then, and still is, the husband of the defendant, M. A. Bookman, and was living upon said premises, agreed with Dr. Bookhart to assume the said debt, and, to satisfy the said Starnes, arranged to execute his note, indorsed by his wife, the defendant, M. A. Bookman, and by Mrs. M. A. Holmes, who was then an aged lady, residing at Columbia, S. C., the aunt of his wife, Mary A. Bookman, and the mother of the plaintiff, Mary A. Chambers. This note was payable to the order of Dr. S. W. Bookhart, and in consideration thereof, the bond and mortgage of Jacob Bookman, trustee, were turned over and delivered to the said A. G. Bookman, who, by the arrangement, caused the same to be assigned to Mrs. M. A. Holmes by an instrument dated

the 14th day of September, 1877, to indemnify her from
loss on her indorsement of said note.    This arrangement
was negotiated by the defendant, A. G. Bookman, himself,
with the purpose in view of accomplishing a sale of said
premises so that they could be purchased in the name of his
wife, Mrs. M. A. Bookman.

"Subsequently, at the instance and request of the defend-
ant, A. G. Bookman, Mrs. M. A. Holmes, the legal holder of
said bond and mortgage, caused the tract of land to be
advertised under the powers contained therein for twenty-
one days in the Winnsboro *News and Herald,* and to be
offered for sale before the court house door for said county
and State, at which sale the defendant, Mary A. Bookman,
became the purchaser at the price of $3,800.    The evidence
seems to show that this purchase price had been paid either
at the time or subsequently.·   The whole transaction, how-
ever, was conducted with the full knowledge and approval
of the defendant, A. G. Bookman.

"It is now claimed that Mrs. Holmes was never compelled
to pay anything on account of her liability on the note to
Starnes, and evidence was introduced before me to show
that the note was not protested at maturity, and, therefore,
that Starnes could not hold Mrs. Holmes responsible.    As
before stated, the note was made by A. G. Bookman, payable
to the order of Dr. S. W. Bookhart, and was indorsed by
Mrs. M. A. Bookman and Mrs. M. A. Holmes, who thereby
intended to become responsible to Dr. Bookhart for its pay-
ment.    They thus, under the law of this State, became joint
makers with A. G. Bookman, and were not entitled to notice
of protest.    Mrs. Holmes has been dead for a good many
years, and no evidence was offered directly to the point that
the note had not been paid by her.    At any rate, the relations
which are shown to have existed between Mrs. Holmes and
the defendant, Mary A. Bookman, and her husband, A. G.
Bookman, were such as to satisfy me that although she may
have held only the legal title to the mortgage as indemnity,
she has received no payment except what was due to her,

and none that did not meet with the full approval of both of the defendants, M. A. Bookman and A. G. Bookman. It is seen that she repeatedly indorsed notes for both of the defendants, and united with them in guaranteeing their contracts for supplies for the running of their plantation.

"Mrs. M. A. Holmes executed to Mrs. M. A. Bookman a deed for the premises in question, bearing date the 4th day of February, 1878, whereby she recited the execution of the mortgage by Jacob Bookman, as trustee, to Samuel W. Bookhart, and the advertisement and sale under the powers contained in the mortgage, and that Mrs. M. A. Bookman had become the purchaser thereof at the price of $3,800, and undertook to convey the premises to her, but executed the said deed in her name only. Mrs. M. A. Bookman at once took possession of said premises, and her husband, A. G. Bookman, commenced to cultivate the same, claiming that he was cultivating the same as her property. Jacob Bookman, the trustee, continued to live on the premises with the family of A. G. Bookman, and does not seem to have questioned the title of the defendant, M. A. Bookman, at any time. Indeed, he seems to have acquiesced in the arrangement whereby the title of the property was to be transferred to Mrs. Bookman. He died in the fall of 1883.

"Mrs. Holmes, who seems to have entrusted the management of the entire scheme to the defendant, A. G. Bookman, seems to have been convinced that he had been successful in transferring the title to her niece, Mrs. M. A. Bookman, for we see that in 1882 she indorsed two notes made by A. G. Bookman and indorsed by Mrs. M. A. Bookman, the payment of which was secured by a mortgage made by Mrs. M. A. Bookman to her on the property in question for $1,900. These notes were afterwards paid by her, and represented the debt which was adjudged to be the second lien upon the property in question in the case of Mary A. Chambers v. Mary A. Bookman and others. In 1884, A. G. Bookman applied to Mrs. Holmes for a loan of $2,500 on the bond of his wife, Mrs. M. A. Bookman, secured by a mortgage of the

premises in question. Mrs. Holmes referred him to Mr.
Edward R. Arthur, who was her attorney in fact, and Mr.
Arthur required that he should furnish a certificate from Mr.
Buchanan, of the Winnsboro bar, as to the sufficiency of the
title and its freedom from encumbrances. This was fur-
nished in the shape of a letter addressed by Mr. Buchanan,
dated January 5, 1884, to Mr. A. G. Bookman, and was
delivered by Mr. Bookman to Mr. Arthur. Mr. Bookman
also made representations that the title of his wife, Mrs.
Mary A. Bookman, to the property in question, was good
and free from encumbrances. Upon the strength of these
representations, Mr. Arthur, acting as attorney for Mrs.
Holmes, made the loan and paid off, at the direction of Mr.
Bookman, a note made by A. G. Bookman, indorsed by Mrs.
M. A. Bookman and Mrs. M. A. Holmes, to Jones, Davis &
Bouknight, and remitted the entire balance of the proceeds
($1,650) by a check payable to the order of A. G. Bookman,
attorney for M. A. Bookman, and that amount was received
by said A. G. Bookman and used entirely for his own pur-
poses. No instalment, either of interest or principal, having
been paid upon the bond in question, the action above re-
ferred to, of Mary A. Chambers *v.* Mary A. Bookman and
others, was commenced and was defended by her upon the
ground that, being a married woman, the money had been
borrowed for the use of her husband, A. G. Bookman, and
said defendant, A. G. Bookman, actively prosecuted said
defense, testifying on his wife's behalf that every dollar of
the proceeds of the money had gone to his own benefit and
not to hers. Notwithstanding this defense, the Circuit
Court decreed in favor of the mortgage, from which decree
an appeal was taken to the Supreme Court, where it was
affirmed. In said cause, Mr. Buchanan appeared as the
attorney for Mrs. M. A. Bookman, defendant, and Mr.
Obear appeared as attorney for one of the defendants to said
cause. At the sale under such decree, Mr. Obear bid in the
property as attorney. It was afterwards learned that in

making such bid, he acted as attorney for Weston C. Book-man.

"After the decree of the Supreme Court affirming the decree of the Circuit Court in said cause, some time prior to May, 1889, the defendant, A. G. Bookman, learned through a communication from Mr. Buchanan that there was some defect in the proceedings for the sale under the Jacob Book-man mortgage, and that the title to the premises in question was probably in himself and his brothers and sisters, as children of Jacob Bookman. He thereupon procured from all of his brothers and sisters a deed of conveyance for their interests in said premises, and he now sets up that title as against the claim of the plaintiff that the title is in the defendant, Mrs. M. A. Bookman. It is contended by the plaintiff that the execution of the bond and mortgage by Jacob Bookman, being a part of the transaction whereby the trust itself was created, and being the consideration for the deed creating the trust, was binding upon the trust estate, and I concur in their view upon this point. It is further contended that, although the deed whereby Mrs. Holmes undertook to convey the premises in question was defectively executed, so as not to operate as a deed of conveyance, Mrs. M. A. Bookman having entered into possession upon the sale and having paid the purchase money, that she has a good equitable title as purchaser in possession, having paid the purchase money, and also that her title, by possession and the statute of limitations, has ripened into a perfect title. I am inclined to think that she is correct in both these views, but I do not rest my judgment upon either of them. She further contends that even if not correct in either of these views, that the defendant, A. G. Bookman, and all of the other defend-ants who claim as privies with him, are estopped by his active participation in the negotiation of the loans in question, and by his representation that the title of the property was in Mrs. M. A. Bookman, from now averring to the contrary.

"I find as facts that the connection of Mrs. Holmes with this matter, and every step taken by her towards the consum-

mation of the arrangement, was with the full knowledge and
at the solicitation of the defendant, A. G. Bookman, and that
if the defendant, Mrs. M. A. Bookman, did not acquire a
good title to the premises by the purchase in question, it was
because of the failure to accomplish what the defendant, A.
G. Bookman, represented would be accomplished by such
proceedings; and that when the defendant, A. G. Bookman,
applied to Mrs. Holmes and her attorney in fact, Mr. Arthur,
for the loan above referred to, they had the right to rely upon
the representations then and previously made, that the title
to the property in question was in Mrs. M. A. Bookman, and
that the said A. G. Bookman, having then and previously
actively represented the title so to be in Mrs. M. A. Book-
man, and having made use of the funds so borrowed for his
own purposes, it would be the grossest fraud upon the holder
of the mortgage for him now to be allowed to aver that the
title was not in Mrs. Bookman.    Mr. Arthur, who acted for
Mrs. Holmes as her attorney in fact, is certainly not shown
to have known or had any reason to suspect any defects in
the title.    It is urged that Mrs. Holmes, having been the
assignee of the mortgage, and having allowed the sale to be
transacted in her name, is bound to know of the defects in
the title of Mrs. Bookman.    In this I do not concur, as she
received the papers only from A. G. Bookman, and seems to
have known only what he represented to her.    The sale
seems to have been transacted with his full knowledge and
consent, and I have reached the conclusion that even then she
had full reliance upon his representations and his faithfully
performing acts necessary to carry out the scheme which had
been formed for the transfer of the title to Mrs. M. A. Book-
man.    If the money due to Mr. Starnes on his note was
never paid, it was because the defendant, A. G. Bookman,
desired and requested that it should not be paid.    I, there-
fore, am of opinion that every principle of equity now estops
him from setting up his title to the premises in question.

    "The other defendants, except Mrs. M. A. Bookman, all
claim through mortgages executed by him subsequent to the

mortgage to Mrs. M. A. Chambers, and, therefore, are privies with him and bound by this estoppel, unless they can put themselves in position of purchasers for value without notice of the equity. None of them have undertaken to prove the considerations of their mortgages, or that they did not have full notice of the claim of Mrs. Bookman and Mrs. Chambers, except the defendant, Mrs. Davis, who took her mortgage from the defendant, David R. Flenniken. Counsel for Mrs. Davis admits that, being the assignee of the bond and mortgage, which are sealed instruments, Mrs. Davis cannot occupy a higher position than the defendant, David R. Flenniken, but that David R. Flenniken was in the position of a purchaser for value without notice, having taken the bond and mortgage in consideration of some other mortgage surrendered by Flenniken to Bookman, and said Flenniken had no notice. I find from the evidence that it is very uncertain as to what paper, if any, was surrendered by Flenniken at the time of the execution of the new mortgage, and I further find that at the time thereof said Flenniken was in such a position as to have been bound by knowledge of the claim of Mrs. Bookman. He had testified in the cause on the trial of the cause above referred to. He had, in 1888, taken from Mrs. Mary A. Caldwell, his mother-in-law, an assignment of her claim, which had been adjudged to be the first lien upon the premises in the name of Mrs. M. A. Bookman, and he was the actual holder of that claim at the time of the taking of the mortgage in question. That claim was subsequently paid to him by Mrs. M. A. Chambers, the plaintiff in this action, who took from him the assignment which he then and previously had held from Mrs. M. A. Caldwell. I, therefore, conclude that none of the defendants can avail themselves of the plea of purchasers for value without notice.

"The defendant, Mrs. M. M. Flenniken, sets up a mortgage executed to her by A. G. Bookman, trustee, upon the premises in question, in consideration of her conveyance of the premises to the said A. G. Bookman, trustee. She bases

her right to so convey upon a tax title made by the sheriff of Fairfield County to her in 1895, at a sale of the property for delinquent taxes levied against the same as the property of the defendant, Mrs. Mary A. Bookman. She produced in evidence a tax deed, signed by the sheriff, purporting to convey a tract of 300 acres to her. With reference to this claim, I find the following facts:

"That a tract of 300 acres of land was assessed for taxation in the year commencing the 1st of November, 1893, in school district 18, Fairfield County, in the name of the defendant, Mrs. M. A. Bookman, and further find that this was intended to be the tract of land which is a part of the larger tract in question, as above stated. I find that the taxes were not paid by Mrs. M. A. Bookman and that they became delinquent upon the books of the treasurer for Fairfield County. I find that the treasurer for Fairfield County issued to the sheriff for Fairfield County an original execution against the property of the defaulting taxpayer, but that he did not issue the same in duplicate, as the duplicate execution was produced before me still in the book of original executions. It was not filled out, and it is clear that it was never issued. I further find that the sheriff did not enter upon the premises in question and take exclusive possession thereof before the pretended sale thereof. I further find that the advertisement of the land was not such as was calculated to inform any one that the land in question so to be sold was the property which was undertaken to be conveyed. The advertisement, dated July 15, 1895, stated that the tract of land contained 390 acres, and that it was sold as the property of Mrs. M. A. Bookman for taxes for the year commencing November 1, 1895. There was not a single element of correct description except the statement that the property was situate in school district 18 of Fairfield County. No effort was made to state the boundaries.

"This sale occurred on the 5th day of August, 1895, but the money was not paid until the 9th of September, 1895, when the sheriff delivered the deed which was produced and

offered in evidence under the objection of the plaintiff's counsel, who afterwards moved to strike out the same because it was not a complete deed. The sheriff did not attach to it a duplicate of the execution lodged at the time by the treasurer, and did not indorse, even upon the original execution, any statement of his proceedings thereunder. I find that the original execution was duly returned to the treasurer of Fairfield County on the 9th of September, the day the sheriff received the payment of the bid. The sheriff did not undertake to put the purchaser, Mrs. M. M. Flenniken, into possession of the property. That she subsequently entered into an agreement with the defendants, A. G. Bookman and Mrs. M. A. Bookman, whereby they executed to her a quit claim deed in consideration of her reconveying the property to A. G. Bookman in trust for his children. I conclude that without the lodgment of a duplicate in his office and the taking of the exclusive possession of the premises under the provisions of law, and the due advertisement of the said premises, that said sheriff had no authority of law to make the sale; and I further conclude that not having attached to the deed executed by him a duplicate of the execution, with the certificate as to his proper proceedings thereunder, and not having put the purchaser, Mrs. M. M. Flenniken, into posession of the property, that the deed in question was not executed with due formality, and that no title passed to said Mrs. M. M. Flenniken thereby.

"This brings me to the conclusion that the agreement referred to, entered into by the plaintiff and the defendant, Mrs. M. A. Bookman, on the 27th day of December, 1890, should be carried into effect. By the terms of that agreement, the plaintiff, Mrs. Mary A. Chambers, was to comply with the bid for the premises assigned to her by Henry N. Obear, as above stated, and was thereupon to convey to the said Mrs. Mary A. Bookman in fee simple, but without warranty, 200 acres of said tract of land, to be selected by her, including the homestead of forty acres thereof; but if, upon the test thereafter to be applied, it should appear that

said homestead was not so to be sold by decree in said cause, and that consequently said Mary A. Chambers had acquired no title thereto by her purchase at said foreclosure sale, then said Mary A. Chambers would convey to said Mary A. Bookman, in fee, but without warranty, forty other acres of said tract adjacent to that already conveyed in lieu of the said homestead, and that the said Mary A. Bookman was to pay the sum of $2,000, to be applied, first, to the payment of the Caldwell claim, provided for in said decree, and then to the payment of any and all cost for which the said Mary A. Bookman might be liable, except the cost and disbursements of her own attorneys, if any there should be, and the residue to be paid over to the said Mary A. Chambers, or her attorneys, to be applied to the payment of her attorneys' fees in said cause.

"The defendant, Mrs. Bookman, has paid to the plaintiff, Mrs. Chambers, on account of said agreement, the sum of about $800. The exact amount paid has not been satisfactorily established before me, and I therefore recommend that she be adjudged to pay the full sum of $2,000, with interest from the date of said agreement, and to be credited with the exact amount paid by her, to be ascertained by a further reference for that purpose, and that upon such payment, the plaintiff, Mary A. Chambers, be adjudged to convey to her the said 200 acres, including the homestead, as I find that said homestead was included in the tract ordered to be sold in said cause; and I further recommend that the 200 acres of land so conveyed be charged with the payment of the costs and expenses of this case, to be taxed by the clerk of the Court; and that if the said Mrs. Mary A. Bookman shall fail to pay said sum of money on or before the 1st day of November, 1901, that said 200 acres of land be sold by the clerk of the Court of Common Pleas for Fairfield County before the court house door for said county, on salesday of December, 1901, or on some convenient salesday thereafter, for one-half cash, the balance to be secured by the bond of the purchaser and a mortgage of the premises, payable

twelve months after date, with a clause providing for the payment of attorney's fees, taxes, &c., in case of foreclosure; and that out of the proceeds of said sale the costs and disbursements of this case and expenses of said sale be first paid, and then that the balance coming to the plaintiff, Mrs. Mary A. Chambers, to be ascertained as aforesaid, be then paid, and that the surplus, if any, be paid out to the other defendants in this case who have established their liens against the said defendants in the order of their priority, which has been settled by the decree of the Court of Common Pleas for Fairfield County in the cause entitled McDonald & Douglass *vs.* A. G. Bookman *et al.*

"All of which is respectfully submitted."

That portion of the decree of his Honor, the Circuit Judge, relating to the pivotal question in the case is as follows:

"I will next consider the question of estoppel.

"Estoppel must be established by the preponderance of the evidence, and the burden rests on the party claiming the estoppel. *Bethune* v. *McDonald*, 35 S. C., 88.

"The allegations of the complaint as to the estoppel are:

" 'Paragraph 3. That the defendant, Mary A. Bookman, was the niece of the said Mrs. Mary A. Holmes, and from about the year 1882 up to the present date was seized in fee of a certain tract of land situate in the county of Fairfield and said State, described in the mortgage hereinafter alleged, executed and delivered by her to Edward R. Arthur, attorney, and being so seized and possessed of the said tract of land; and desiring during the year 1884 to procure a loan thereon from said Mrs. Mary A. Holmes, she and her husband, the defendant, A. G. Bookman, represented to Mrs. Mary A. Holmes that the said Mrs. Mary A. Bookman was seized in fee of the said premises, and that they were free from encumbrances save and except a mortgage previously executed thereon by the said Mary A. Bookman to the said Mary A. Holmes, and upon the earnest solicitation and the strong representations made by the said Mrs. Mary A. Bookman and A. G. Bookmaan to the said Mary A. Holmes as to

the value of the said premises, and that the same were the
property in fee simple of the said Mary A. Bookman, free
from encumbrances other than as above stated, the said Mrs.
Mary A. Holmes consented to make the loan so applied for,
and instructed her attorney, E. R. Arthur, Esq., upon the
delivery to him of a bond and mortgage executed by the said
Mrs. Mary A. Bookman to him, as attorney, to pay over the
money to the said Mrs. Mary A. Holmes.'

" 'Paragraph 7. That in said transaction the said defend-
ant, Mary A. Bookman, was represented by the defendant,
A. G. Bookman, as her attorney in fact save in the act of
executing the said bond and mortgage, and the proceeds of
said loan were paid over to the said A. G. Bookman, as the
attorney in fact of the said Mrs. Mary A. Bookman, and
was in large part used by him without the knowledge or
consent of the said Mrs. Mary A. Holmes, or her attorney,
but with the knowledge and consent of the defendant, Mrs.
Mary A. Bookman.'

" 'Paragraph 15. This plaintiff alleges that the claim of
said A. G. Bookman is without foundation, but even if there
had been color of right for such claim, he would be in law
estopped from setting up the same on account of his repre-
sentations and dealings with the said Mrs. Mary A. Holmes,
through whom this plaintiff claims.'

"Why should Mrs. Mary A. or A. G. Bookman have made
the representations, above set out, or any other, as to the
title of Mrs. Mary A. Bookman? Mrs. Bookman derived
all the title she had from Mrs. Holmes, and it would have
been a strange demand on the part of Mrs. Holmes to ask
Mrs. Bookman to say whether the deed she received from
Mrs. Holmes, and for which she paid $3,800, had conveyed
to her a good title. All of the parties honestly believed, at
that time, that Mrs. Bookman's title was good, save for the
mortgage she had put upon the place. The knowledge of
Mrs. Holmes was as perfect as that of Mrs. Bookman or of
A. G. Bookman. I shall not quote the testimony; but a
careful study of it induces me to conclude, as matter of fact,

that Mrs. Holmes, Mrs. Bookman, and the attorney who examined the title of Mrs. Bookman, all believed that Mrs. Bookman's title was good, and acted upon that belief. Under these circumstances there was no reason in asking A. G. Bookman his opinion in the title or his knowledge thereof. He could give no knowledge upon the subject to Mrs. Holmes. She knew every fact in relation to that title, just as well, if not better, than either Mary A. or A. G. Bookman. The testimony failed to show that A. G. Bookman made the representations as alleged in the complaint, and further, the testimony shows that Mrs. Mary A. Holmes did not act upon such representations as are alleged to have been made by A. G. Bookman regarding the title of Mary A Bookman. In 1888 or 1889, A. G. Bookman was advised as to his rights under the deed of S. W. Bookhart to Jacob Bookman, and he then assumed possession and control of the land, and purchased the interests of the other children of Jacob Bookman. Prior to 1888, and the advice then received, A. G. Bookman did not know that he had an interest in said land. The recording of the deed from S. W. Bookhart to Jacob Bookman was constructive notice thereof; but, as matter of fact, A. G. Bookman believed, as did Mary A. Bookman and Mrs. Mary A. Holmes, that the sale and deed of Mrs. Holmes to Mrs. Bookman had passed the fee to Mrs. Bookman. A. G. Bookman, as the attorney or agent of his wife, Mary A. Bookman, approached E. R. Arthur, Esq., as the attorney of Mrs. Mary A. Holmes, to close a loan which, as alleged in the complaint, Mrs. Holmes had agreed to make to Mrs. Bookman, and had 'instructed her attorney, E. R. Arthur, Esq., upon the delivery to him of a bond and mortgage executed by the said Mrs. Mary A. Bookman to him, as attorney, to pay over the money to the said Mrs. Mary A. Bookman;' the said E. R. Arthur, instead of following such directions, refused to make the loan or to pay over the money, until the title to the land was examined by an attorney at law, and his report upon the title was received. This clearly shows that if any representations as to title had been made

by either A. G. Bookman or his wife, it was not relied upon, and that the loan was made upon the faith of an attorney's opinion, which E. R. Arthur, Esq., required, and without which the loan would not have been made.

"The requisites of equitable estoppel as laid down in Bigelow on Estoppel (3d edition), 434, and approved by our Supreme Court in *Easton* v. *Brandenburg*, 42 S. C., 351, are as follows:

" '1. A false representation or concealment of facts. 2. Such representation must have been made with a knowledge of the facts. 3. The party to whom such representation was made must have been ignorant of the truth of the matter. 4. The representation must have been made with the intention that the other party should act upon it. And 5. The other party must have been induced to act upon it.'

"What are the facts as regards these requisites?

"1. The evidence does not show by the preponderance thereof, that any representation or concealment in relation to the title to the land in question was made by A. G. Bookman.

"2. If any representation was made by Bookman, it was made in ignorance of the true state of facts.

"3. That while the party to whom such representations are alleged to have been made may have been ignorant of the true state of facts, she had the same and better means of knowing the truth than did A. G. Bookman. She had the mortgage of Jacob Bookman in her possession; she had the lands covered by said mortgage sold, and she made the invalid deed to Mrs. M. A. Bookman. She knew what she had done.

"4. If there was any representation made by A. G. Bookman, as alleged, the evidence does not show that it was his intention that Mrs. Holmes or E. R. Arthur, Esq., her attorney, should rely upon his statements, nor that there was any gross or culpable negligence on his part in relation thereto. He readily complied with the demand made on him that the

opinion of attorney at law on the title should be obtained before the loan could be made.

"5. The representations of A. G. Bookman, if made as alleged, are not proven to have been the inducement to the making of the loan of Mrs. Holmes and her attorneys, because the loan was refused without the opinion of an attorney upon the title.

"6. If Mrs. Holmes was misled, it may be that she was misled to her injury, but not by A. G. Bookman.

"It is alleged that A. G. Bookman received and used a part of the money for which the mortgage was given by Mary A. Bookman, and, therefore, he was, or should be, estopped. This is denied. The Supreme Court, in the case of Chambers *v.* Bookman, held that Mrs. Bookman borrowed this money, that her estate was bound by the mortgage given to secure it, and that what she did with the money could make no difference. She had a right to give it to her husband; and plaintiff had no right to complain.

"Having reached the conclusion that plaintiff has failed to make out her case, that the defendant, A. G. Bookman, is not estopped by his representations or dealings with Mrs. Mary A. Holmes from asserting his title to the premises described in the complaint, it follows that plaintiff's cause or causes of action cannot be sustained, and that her complaint should be dismissed, with costs in favor of the defendants."

The plaintiff appealed from said decree upon numerous exceptions.

*Opinion.* The first question that will be considered is whether the Circuit Judge erred in deciding that A. G. Bookman was not estopped from relying upon the fact that he was the owner of the land in fee. After careful consideration of all the testimony in the case, this Court is satisfied that A. G. Bookman by his *active* conduct *induced* Mary A. Holmes, without fault on her part, to enter into the transaction with Mary A. Bookman, which resulted in the execution of the mortgage that has given rise to this

case.   In vol. 2, section 803, of Pom. Eq. Jur., the author of that philosophical work says: "When all the varieties of equitable estoppel are compared, it will be found, I think, that the doctrine rests upon the following general principle: when one of two innocent persons—that is, persons each guiltless of an intentional moral wrong, must suffer a loss— it must be borne by that one of them who by his conduct, acts or omissions, has rendered the injury possible."   It has been well said: "If one remains silent where in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent."   For a stronger reason he should remain silent—when his active conduct has brought about the loss to an innocent party.   In section 807 of Pom. Eq. Jur., under the head of "Fraudulent Intent Necessary in an Estoppel Affecting the Legal Title to Land," the general principle is thus stated: "The general rule is that if a person interested in an estate, knowingly misleads another into *dealing* with the estate, as if he were not interested, he will be postponed to the party misled, and compelled to make his representation specifically good.   It applies to one who denies his own title or incumbrance, when inquired of by another who is about to purchase the land, or to loan money upon its security; to one who knowingly suffers another to deal with the land as though it were his own; to one who suffers another to expend money in improvements without giving notice of his own claim, and the like.   This equity being merely an instance of fraud which is evidence of an intent to deceive.   In the language of a most recent decision, to preclude the owner of land from asserting his legal title or interest under such circumstances, 'there must be shown, either actual fraud, or fault, or negligence equivalent to fraud, on his part in concealing his title, or that he was silent when circumstances would impel an honest man to speak; or such actual intervention on his part, as in Storrs *v*. Baker, to render it just that as between him and the party acting upon his suggestion he should bear the loss.'   What is the reason of this rule?   It is accurately explained in this

same decision. While the owner of the land may by his acts *in pais* preclude himself from asserting his legal title, it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. *It is opposed to the letter of the statute of frauds,* and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light or doubtful character." The most important "grounds of justice and equity admitted by courts of equity to uplift and displace the statute of frauds concerning legal titles to land by fastening a liability upon the wrong-doer, is fraud. There are many instances in which equity compels the owner of land to forego the benefits of his legal title, and to admit the equitable claims of another, in direct contravention of the literal requirements of the statute, but they all depend upon the same principle. The rule under consideration is strictly analogous to another familiar rule, that a legal owner of land cannot be turned into a trustee *delicto* by any mere words or conduct. A constructive trust *ex delicto* can never be impressed upon land as against the legal title by any verbal stipulation, however definite, nor by any mere conduct; such trust can only arise where the verbal stipulation and conduct together amount to fraud in the contemplation of equity."

Turning to the case of *Storrs* v. *Baker,* 6 Johns. Ch., 166, the Court uses this language: "The presumption is that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them; and nothing can be more liable to abuse than to permit a person to reclaim his property in opposition to all the equitable circumstances which have been stated upon the mere pretence that he was at the time ignorant of his title. Such an assertion is easily made and difficult to contradict. It is rarely that a mistake in point of law, with full knowledge of all the facts, can afford ground for relief, or be considered as sufficient indemnity against the injurious consequences of deception practiced upon mankind; and if the person, as in this case,

is not merely silent and passive but gives explicit confirmation of the title of the party in possession, and encourages him to sell and encourages the purchaser to buy, the case is greatly altered, and equity and policy equally dictate that he, and not the purchaser, ought to suffer. His ignorance of the law ought not to protect him from the operation of the rules of equity. He could easily have dispelled that ignorance, for he had the fact of the will of his daughter before his eyes; and if he may be allowed to plead his voluntary ignorance in destruction of equitable rights growing out of his own acts and assertions, the grossest imposition and the greatest fraud might be practiced with impunity. It would seem, therefore, to be a wise principle of policy, that ignorance of the law, with knowledge of the fact, cannot generally be set up as a defense; and it appears to be settled by a course of equity decisions, that ignorance of one's legal rights does not take the case out of the rule, when the circumstances would otherwise create an equitable bar to the legal title."

In the case of *Dunlap* v. *Elliott,* 22 S. C., 550, the Court quotes with approval the following from Bigelow on Estoppel, 434: "It is now a well established principle that when the true owner of property holds out another, or allows him to appear as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner which precludes him from disputing as against such third party, the existence of the right or power, which he caused or allowed to appear to be vested in the party making the sale."

In vol. II., Enc. of Law (2d ed.), 434, under the caption of "Distinction Between Silence and Positive Act of Party Estopped," it is said: "The rule has been laid down unqualifiedly that silence in the absence of knowledge of one's rights

will not work an estoppel.   Thus the omission to assert title to land against persons dealing with it as their own in the absence of knowledge of such title, will not estop the owner to set up his claim thereto.   On the other hand, it has been held, that positive acts tending to mislead one ignorant of the truth, which do mislead him to his injury, are a good ground of estoppel, and ignorance of title or right on the part of him who is estopped, will not excuse his act.   Thus, where an owner positively encourages another to purchase land from a third person, on the faith that such third person is the owner, ignorance of the facts of the case will not, as a general rule, prevent the operation of an estoppel against him." See, also, *Holland* v. *Jones,* 48 S. C., 267, 26 S. E. R., 606; *Wardlaw & Edwards* v. *Rayford,* 27 S. C., 178, 3 S. E. R., 71.

Our conclusion from the foregoing authorities is, that *positive* acts on the part of the true owner of land, which induce an innocent party to deal with it as if the title was in another, will estop him, even if he was ignorant of his title, and no fraud was *actually* intended.   The Circuit Judge was, therefore, in error when he ruled that A. G. Bookman was not estopped by his conduct.

There is another reason why A. G. Bookman cannot defeat the plaintiff's rights in this action.   When Mary A. Bookman entered into possession of the land under a deed made in execution of a defective and invalid power of sale contained in the mortgage, believing that she was clothed with the legal title at the time of entry, A. G. Bookman's right to recover possession of the land was postponed until he paid the amount due on the mortgage, and he was remitted to his equitable right of redemption.   In *Sims* v. *Steadman,* 62 S. C., 300, the principle is thus stated: "The main question is whether the heirs of the mortgagor are entitled to recover possession of the land from the defendants claiming under a continuous chain of title from one who entered upon the land, under a deed made in execution of a defective and invalid power of sale contained in a mortgage,

in good faith and in the honest belief that he was clothed with the legal title, at the time of such entry. The cases of *Givens* v. *Carroll*, 40 S. C., 413, 18 S. E. R., 1030, and *Williams* v. *Washington*, 40 S. C., 457, 19 S. E. R., 1, conclusively show that his Honor, the Circuit Judge, did not err in ruling that the defendants are entitled to be subrogated to the rights and equities of the original mortgagees. The complaint does not allege that the defendants, or those from whom they claim, entered into possession of the land forcibly and in violation of law, but simply, 'that the defendants are in unlawful possession thereof, and withhold the same from these plaintiffs, claiming some interest therein.' The agreed statement of facts, and the decree of the Circuit Judge, show that Cook went into possession under and by virtue of his said purchase and deed, and that the defendants claim the land by a continuous chain of title from him. When one enters into possession of land under a deed purporting to convey legal title, believing that his title is good in fee, but which is, nevertheless, void by reason of the fact that the power of sale contained in the mortgage in pursuance of which the deed was executed, was defective and invalid, equity will refer his possession to his deed purporting to convey the fee, to prevent him, in tenderness for his honest mistake, from being considered a trespasser. The case of *Rabb* v. *Patterson*, 42 S. C., 528, 20 S. E R., 540, shows that he is not a trespasser. The necessity of being clothed with a title purporting to convey the fee is set forth in 2 Pom. Eq. Jur., sections 756 and 785. Equity gives effect to the deed purporting to convey the legal title in so far as is· necessary to protect the rights of those entering into possession of the land under these circumstances, and postpones the plaintiff's right to recover possession until he does equity by paying the amount due on the mortgage—*Cathcart* v. *Suggenheimer*, 18 S. C., 123; *Bailey* v. *Bailey*, 41 S. C., 337, 19 S. E. R., 669; *Bryan* v. *Kales*, 162 U. S., 411; *Bryan* v. *Brasins*, 162 U. S., 415—and remits him to his equitable rights of redemption." The

question as to the right of A. G. Bookman. to redeem was not presented by the pleadings, and could not properly be considered, even if he was not estopped from raising such question. *Johnson* v. *Johnson,* 27 S. C., 309, 3 S. E. R., 606; *Sims* v. *Steadman, supra.*

All other questions were dependent upon that of estoppel, and are satisfactorily disposed of in the report of the master.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.

PER CURIAM. After a careful examination of the within petition, this Court fails to discover wherein any material question of law or fact has either been overlooked or disregarded.

It is, therefore, ordered, that the petition be dismissed and that the order heretofore granted staying the remittitur be revoked.