## PARROTT v. BARRETT.

1. WILL devising certain lands to A, "to and for the natural term of her life and no longer; to her sole and separate use * * * and at and immediately upon the death of my said daughter * * * I give, devise and bequeath the said tract of land to the heirs of her body who may be living at the time of her death, share and share alike; to their heirs and assigns forever," passes the fee at death of life tenant to the children and grand-children of testator then living, *per capita*.

2. ESTOPPEL—PARTITION—CONFIRMATION.—Children of a father who had joined in a deed and scheme of partition of lands devised to his mother for life, and at her death to the heirs of her body then living, share and share alike, but who dies before the life tenant, are not estopped from claiming partition on death of life tenant under the will, because they have remained in possession of the land as heirs at law of their father since his death, nor have they by such acts confirmed the partition.
MR. JUSTICE WOODS *dissents*.

3. IBID.—A JUDGMENT in suit by grand-children of testator to enforce provisions of a trust deed executed by the father of lands set apart to him under partition deed between his mother as life tenant and his brothers and sisters, does not estop such grand-children from suing for general partition among themselves and their uncles and aunts of this and other lands, under the will of their grand-father.

4. A FAMILY SETTLEMENT is not binding on children not parties thereto by reason of the fact that their farther was a party thereto, when they do not claim through him, but directly from their grand-father's will.

Before GAGE, J., Sumter, July, 1903.   Modified.

Action for partition by Nettie F. Parrott *et al.* against George McD. Barrett *et al.*   The Circuit decree is as follows:

"This is an action for partition.  The subject matter thereof is a parcel of land containing 889 acres, and referred to in the muniments of title as the 'Green tract.'  The testimony shows the land to be of unusually fertile character

and the market value high. The issues of law are few and there are practically no issues of fact.

"A history of the case is this: The land belonged to Capt. James Rembert, who died testate many years since. He devised it to his daughter, Jane Rembert Barrett, 'to and for the natural term of her life and no longer, to her sole and separate use * * * and at and immediately upon her death * * * I give and devise and bequeath the said tract of land to the heirs of her body who may be living at the time of her death, share and share alike, to them and their heirs and assigns forever.'

"This Jane lived for many years after the death of her father, probably fifty, and only died in the year 1901; but on the 22d day of December, 1874, Janie and her children, Charles, Elizabeth, George, Caleb, Samuel, Albertus and Martha, entered into a paper writing, whereby they undertook to anticipate the time for partition set in the will, and actually effected a division of the 'Green tract' betwixt them; thereafter the son, Charles, died about the year 1880, and the plaintiffs herein are his children.

"As will be conjectured by this time, the plaintiffs contend they were heirs of the body of Jane at the time of her death, and are now entitled to share the Green tract alike with Jane's children.

"The paper writing above referred to is in the handwriting of the late Hon. Thos. B. Fraser. It was stated in argument that he drew it; annexed thereto is an elaborate plat of the Green tract, divided into twelve parcels. Some of the parcels so set off to the children of Jane have come into the possession of other persons and some have become encumbered by strangers, and of some strangers are warrantors. All such new persons are parties hereto. The defendant, Mary L. Barrett, is the widow of Charles S. and mother of the plaintiffs, and she has become the owner by purchase of two parcels of land, containing together 103 acres, assigned in the first instance to Samuel J. Barrett.

"I am of the opinion that under the will of James Rembert the daughter, Jane, took a life estate, and that at her death in 1901 the title was then divisible in equal shares betwixt the six children of Jane, and the plaintiffs, her four grand-children, that is to say: each was entitled to have one-tenth of the whole.

"It was argued at the bar (by Mr. Livingstone) that the testator intended the share of each child of Jane to go to the children of each child, and that he did not use 'heirs of her body' and 'share and share alike' in a technical sense. And to give strength to that contention, other parts of the will were cited, wherein the testator directed a distribution 'among my heirs according to the provisions of the act generally termed the statute of distributions;' but, on the other hand, the use by the testator of different language for different devises, goes to show he had different purposes and not one purpose. The language of the will is too plain for construction, strong as the argument is. *Kerngood* v. *Davis*, 21 S. C., 207.

"I am, however, of the opinion that the paper writing above referred to, together with the things that have been done thereunder, have modified the direction of the will. It is not worth while to state the law of estoppel and of confirmation by minors, for it rests on sound principles of justice and equity.

"In the case at bar, Jane was entitled to enjoy the entire 889 acres from the death of the testator, James Rembert, in 1858, until her own death in 1901, and to the exclusion of her children and their children. But in 1874, twenty-seven years before the time was ripe, she and her seven children made the paper writing 'in anticipation of the period prescribed in the said will, and for the natural love and affection which she bore to her said children.' If that paper can be sustained and be made the rule of division now, it ought to be done. It goes without saying, had the plaintiffs and those acting for them ignored the paper writing and held their hands until 1901, they could now demand

that the letter of the will be enforced. But the family division was so just, so reasonable, and so for the benefit of all concerned, that it deserved the most serious consideration at the hands of a court of equity. The parties cannot now be put in *statu quo;* each of them has used and enjoyed his or her share for more than a quarter of a century. In 1887, the paintiffs and their mother recovered in this Court the share which Charles S. Barrett had accepted, and which one W. A. James, sr., had a short time theretofore fraudulently gotten from them. They have ever since enjoyed that parcel and claimed it as their own. The plaintiff, Nettie, reached her majority in 1893, Janie in 1896, Lila in 1897, and Charlton 25th August, 1899. This action was begun July, 1901. The plaintiffs knew their rights under the will of James Rembert, and they knew them before Jane's death and while they enjoyed the rents and profits; they, therefore, have not begun an action to recover a newly-discovered right. Mrs. Mary L. Barrett testified, 'We have always thought that at the death of Mrs. Barrett they would act according to her will, and there would be a new division. Q. Is that the reason why you and your children have not improved it? A. Yes.'

"I am of the opinion, the plaintiffs have waited too long to undo so just a family arrangement, and I am of the opinion their silence will be taken as a confirmation of it.

"Looking, therefore, to the paper writing for a chart of the rights of the parties, what does it provide? In my opinion, the shares set aside for all the children of Jane must stand intact, in whose ever hands they now be. But one parcel, No. 5, containing 168½ acres, was set aside for the mother, Jane; (a) 'for her life, according to the terms of the said will; (b) and that in case there should be any persons living at her death who may be heirs of her body and not parties to this deed, and entitled to an equal share in the said tract of land under the terms of the said will, then that lot No. 5 shall be (1) held as a common fund out of which the interests of said heirs, not parties hereto, shall be

paid and satisfied; or (2) for the reimbursement of any of the parties to this deed of settlement whose possession may be disturbed, for any loss from such disturbance by such heirs not herein provided for; (3) or the reimbursement of any purchasers from any of the parties to this deed who may be subjected to loss by such heirs not herein provided for by the parties hereby confirmed.' The letters and numbers in brackets are my own and are not in the paper writing.

"How shall the 168½ acres of land left by Jane, in 1901, be disposed of? Along with the paper writing, it ought to be inferred that the division at that time into seven shares for the children was one of equality. The testimony so shows as well. Had all the seven children lived until 1901, then only that portion of the above quoted parts of the paper writing marked 'a' would have been operative, and the 168½ acres would in that event have gone in equal shares to the seven children who signed the paper. But so much of the quotation as is marked 'b' refers to a condition which has arisen since the paper was executed. There were, in fact, persons living at Jane's death who answered the description of heirs of her body and not parties to the paper, and entitled by the will to an equal share of the 889 acres; that is the event on the happening of which further provision was made.

"I cannot concur in the view of defendants' counsel (Mr. Haynsworth), that the maker of the paper contemplated other children to be born to Jane; the paper was drawn by counsel of especial learning in the law, and he saw the manifest peril which lurked in the partition ahead of the allotted time. The words of the paper are apt, and comprehensive, and plain. I am of the opinion the very condition has arisen which the scrivener had in mind. Under the paper writing, the plaintiffs have received together only one-seventh of 720½ acres, and they have each received only 1-28 of 720½ acres; whereas, in 1901, they were each entitled to one-tenth of the whole 889 acres by the will. The paper writing has provided how the deficiency of these new heirs

of the body should be made good. Not in full, perhaps, but so far as the funds set aside for that purpose would go. The clauses 2 and 3 were practically the same thing. One has reference to the reimbursement of a child of Jane, the other to a reimbursement of a purchaser from such child. The clause 1 is, in effect, not different from the clause 2. Under both, the 168½ acres is the trust fund, either to make good what the six children might be called on to pay to the four grand-children, or for payment direct to the four grand-children. The 168½ acres was also the only fund set aside by the settlement for equality of division. The paper writing provides, 'and it is further covenanted and agreed that at the death of the said * * * Jane * * * and all heirs of her body not parties hereto shall be satisfied. Anything which remains of lot 5 shall go as directed by the said will for the whole tract.'

"If, therefore, it takes the whole of the 168½ acres to make the plaintiffs equal under the family settlement with the children of Jane, then the whole must so go. If anything remains after such equality has been effected, then that balance must itself be equally divided amongst the heirs of Jane's body, share and share alike. It may be assumed under the family settlement and under the testimony, too, that one acre of the land was and is practically as good as another acre; so that the unit or value for division is one acre.

"Under the environment of 1901, each heir of the body of Jane is entitled to have, by the will, 89 acres, or a fraction less. Excluding the 168½ acres, the children of Jane have each received, on an average, 101 acres of land, and the grand-children, the plaintiffs, have each received 26 1-2 acres.

"If the 168½ acres be given entirely to the plaintiffs, their share will not then be equal to a tenth of the whole; but, under the terms of the family settlement, they can get no more. I am, therefore, of the opinion that the 168½ acres of land marked No. 5 on the plat is of right the sole property of the plaintiffs, and it is so decreed.

"It was stated at bar that no notice of *lis pendens* had been filed in the action, and that since action began, the interests of Charlton S. Barrett had been purchased by A. B. Stuckey, Esq. It was further stated that there were questions betwixt Mannes Baum, creditor, and Geo. M. Barrett, and betwixt T. R. McGhan, creditor, and Margaret A. Phillips, which questions are reserved for future and further considerations. It is further ordered, that the costs of this action be paid as follows, to wit: the costs of plaintiffs by the plaintiffs, and costs of defendants by the defendants."

From this decre all parties appeal.

*Mr. A. B. Stuckey,* for plaintiffs, cites: *Lands should be divided among heirs of Jane Barrett per capita:* 21 S. C., 183; 37 S. C., 255. *Plaintiffs had no cause of action until death of life tenant:* 25 S. C., 524; 59 S. C., 440; 59 S. C., 137; 16 S. C., 228. *As to estoppel by confirmation:* 4 A. & E. D. in Eq., 341, 286. *When estoppel should be applied:* 11 Ency., 388, note 5, 390; 158 U. S., 221; 100 Mo., 150; 120 Mass., 79; 26 S. C., 186; 28 S. C., 331.

*Messrs. Johnstone & Cromer,* for plaintiffs (no citations).

*Messrs. Haynesworth & Haynesworth,* for certain defendants, cite: *The heir here is estopped, as the ancestor would have been:* 11 Ency., 2 ed., 398; 34 S. C., 496; 6 Wait's A. & D., 705; 4 McC., 241; 7 Ency., 22.

*Messrs. Lee & Moise,* for certain defendants, cite: *Plaintiffs cannot retain the benefits of the possession of land assigned to their father and repudiate the partition, without making restitution:* 56 S. C., 508; 61 S. C., 455; 67 S. C., 126; Freman on Judgt., 3d ed., 163, 447, 448; 1 Green. on Ev., 16 ed., secs. 527, 527a; 61 S. C., 426. *As to confirmation of deed of partition by plaintiff:* 27 S. C., 301; 3 Washburn on Real Prop., 5 ed., 261; 9 Rich. Eq., 483. *Court*

*will confirm a proper transaction:* 2 Rich. Eq., 321; 3 Rich.
Eq., 2; 16 S. C., 170; 22 S. C., 423; 33 S. C., 302.

*Mr. Knox Livingston,* for certain defendants, cites: *Court
should decree that plaintiff should now do what their ances-
tors sought to do:* 3 Pom. Eq. Jur., 1387; 2 Rich. Eq., 321; 3
Rich., 1; 31 S. C., 91. *The family arrangement should now
be sustained:* 2 Strob. Eq., 153; 9 Rich. Eq., 483; 18 S. C.,
274; 19 S. C., 278, 591; 32 S. C., 259; 33 S. C., 194; 27 S.
C., 300; 34 S. C., 496; 35 S. C., 521. *The partition and deed
of indenture should be sustained and confirmed as to the
plaintiffs and other parties to the action upon doctrine analo-
gous to that of election and satisfaction:* Story's Eq. Jur.,
sec. 1080; 1 Pom. Eq. Jur., secs. 395, 461, 470, 515, and
note; 3 DeS., 504; 2 Hill Ch., 511; Strob. Eq., 91; 3 Rich.
Eq., 281; Evet Law, 62, etc.; Frem. on Judg., 163-447; 15
Ency., 14; 27 S. C., 301; 16 Ency., 305, 306; 3 Rich., 165.
*Plaintiffs are estopped from denying the force and effect of
the deed of indenture:* 1 N. & McC., 334; 2 Hill Ch., 346;
12 S. C., 314; 15 S. C., 363; Spear Eq., 392; 2 Rich. Eq.,
120; 3 Strob. Eq., 371; Herman on Est., secs. 223-476; 2
Pom. Eq. Jur., 816-821, 964-965; Herman on Est., 108, sec.
494; Frem. on Jud., 447-448; 2 Pom. Eq. Jur., sec. 815: 53
S. C., 195. *Plaintiffs have confirmed family settlement by
continuing in possession and receiving benefits:* Spear's Eq.,
392; 3 Rich., 165; 9 Rich. Eq., 483; 27 S. C., 300; 16 Ency.,
300. *Upon the construction of the will:* 3 Rich. Eq., 541;
Rice's Eq., 10; 1 Rich. Eq., 141; 2 N. & McC., 384; 8
Rich. Eq., 267; 15 S. C., 357; 29 S. C., 470; 13 S. C., 532.

November 23, 1904.    The opinion of the Court was deliv-
ered by

Mr. Justice Jones.    Plaintiffs seek partition of a tract
of land, 889 acres, formerly in Sumter now in Lee County,
among the remaindermen under the will of James Rembert,
deceased, admitted to probate May 11th, 1858.    The second
clause of the will provides:

"Second: I will, devise and bequeath to my beloved daughter, Jane Barrett, all of that tract of land lying towards the south of my plantation, known as the Green tract of land, to and for the natural term of her life and no longer; to her sole and separate use, to be in no way subject to the debts, contracts or control of her present or any future husband; and at and immediately upon the death of my said daughter, Jane Barrett, I give, devise and bequeath the said tract of land to the heirs of her body who may be living at the time of her death, share and share alike; to their heirs and assigns forever. To be esteemed and regarded as of the value of five thousand dollars."

Jane Barrett died in April, 1901, and this action was commenced on 22d July, 1901. The plaintiffs are the children of Charles S. Barrett, who was the son of Jane Barrett, and died in April, 1880, before the death of the life tenant. The defendants are the children of Jane Barrett and those in privity with them. Partition as claimed was resisted mainly on two grounds:

1. That "heirs of the body who may be living at the time of her death, share and share alike," means children of Jane Barrett living at the time of her death, and, therefore, excludes plaintiffs, who as grand-children do not answer that description.

2. The plaintiffs, by their ratification thereof or estoppel to deny, are bound by a partition of said lands made in 1874, among the life tenant, Jane Barrett, and her children, including Charles S. Barrett, the father of plaintiffs. The Circuit Court, in a decree herewith reported, held that under this will, there being six children and four grand-children answering the description, "heirs of the body, &c.," each of the four plaintiffs was entitled to one-tenth of the land, but that their right was modified by the partition of 1874, which he held plaintiffs had confirmed. It was, therefore, decreed that plaintiffs, in addition to the tracts Nos. 1 and 3, containing 106½ acres, set apart to Charles S. Barrett, plaintiff's father, in said partition, should receive tract No. 5,

containing 168½ acres, which had been set apart to Jane
Barrett, life tenant, in said partition agreement, which con-
tained this stipulation: "And it is hereby further agreed by
the said parties, that the said lot No. 5, assigned to Mrs. Jane
Barrett, shall be held by her for her life, according to the
terms of the said will, and that in case there should be any
person living at her death, who may be heirs of her body and
not parties to this deed, and entitled to an equal share in the
said tract of land under the terms of the said will, then that
said lot No. 5 shall be held as a common fund, out of which
the interest of such heirs, not parties hereto, shall be paid
and satisfied, or for the reimbursement of any of the parties
to this deed of settlement, whose possession may be dis-
turbed, for any loss from such disturbance by such heirs not
herein provided for, or the reimbursement of any purchasers
from any of the parties to this deed who may be subjected to
loss by such heirs not herein provided for by the partition
hereby confirmed. And it is further covenanted and agreed
that at the death of the said Mrs. Jane Barrett and all heirs
of her body not parties hereto shall be satisfied, anything
which remains of lot No. 5 shall go as directed by the said
will for the whole tract."

In reaching this conclusion the Circuit Court held that
under the testimony, one acre of land was practically as good
as another, and, therefore, took one acre as the unit of valua-
tion; so that the plaintiffs under the will being entitled to
four-tenths of the 889 acres or 355 acres (omitting frac-
tions), and having received 106 acres through their father
under the partition of 1874, were entitled to 249 acres; but
having confirmed the partition agreement, their further re-
covery was limited to tract No. 5, containing 168 acres, the
stipulated fund for equalization.

Both sides appeal—the plaintiffs contending that they had
not confirmed the partition of 1874 and were not estopped
thereby, and were each entitled to one-tenth of the whole 889
acre tract, the defendants contending that plaintiffs having
ratified the partition of 1874, must be held as satisfied there-

with, and that if entitled to any relief as "heirs of the body, &c.," of Jane Barrett, they should be restricted to a partition of tract No. 5, in accordance with the terms of the will, share and share alike with defendants.

We agree with the Circuit Court in the construction of the will. The plaintiffs, as children of Charles S. Barrett, the son of Jane Barrett, their father having died before Jane Barrett, answered the description of heirs of the body of Jane Barrett, and the will expressly directing that the heirs of her body living at her death should take share and share alike, the plaintiffs take *per capita* and not *per stirpes,* and so are under the will each entitled to one-tenth of the tract of land in question. This conclusion is fully sustained by the cases of *Kerngood* v. *Davis,* 21 S. C., 206; *Dukes* v. *Faulk,* 37 S. C., 265.

We do not think that plaintiffs have done anything with reference to the partition of 1874 which should prevent the assertion now of their rights under the will. The first matter which is relied on as an estoppel against plaintiffs to assert their present claim, is that plaintiffs, with their mother, Mary L. Barrett, after the death of the father, Charles S. Barrett, continued to use the land set apart to Charles S. Barrett as his heirs at law. We see nothing in this inconsistent with plaintiff's claim under the will. Jane Barrett, the life tenant, had the absolute disposal of her life estate. In her motherly affection and unselfishness, she chose to share her life estate with her children. But the plaintiffs were in nowise parties to the partition agreement, at which time three of them were unborn and the eldest was only about two years old. The legal effect of the partition agreement or deed, so far as plaintiffs are concerned, was merely to convey the life estate of Jane Barrett to the persons designated. Plaintiffs' right to use the estate which Jane Barrett conveyed to their father and his heirs, was cast upon them by law, and as the result of Jane Barrett's generosity, not by any agency of defendants. If plaintiffs received any benefits, the benefits did not come from defendants, nor were

defendants misled thereby, nor was any action thereby induced to defendants' prejudice. If plaintiffs on coming of age, during the life of the life-tenant, had repudiated the partition and reconveyed to Jane Barrett, no interest of defendants could have been favorably affected. We see no element of estoppel *in pais* in this.

It is suggested that the fact that the plaintiffs continued to occupy the lands set apart to their father on coming of age during the life of the life tenant, without some act in repudiation of the partition, was holding on to an advantage, inasmuch as it was possible that plaintiffs might (1) not survive the life tenant, and so would lose all interest in the 889 acre tract, or (2) in the event of one or more of the other children of Jane Barrett dying before her, leaving children, plaintiffs' interest might be less than what they might take under the partition. These were possible contingencies, but the conduct of plaintiffs would still not work an estoppel. The general rule of estoppel *in pais* is that "when one person by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon these statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are incompatible and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statement or conduct, if the latter has so far changed his position that he would be injured thereby." 4 Am. & Eng. Dec. in Eq., 258. To work an estoppel, the matter relied on must have induced the party claiming estoppel to assume a position which he otherwise would not have taken. *Draffin* v. *Charleston C. & G. R. R. Co.,* 34 S. C., 464; 4 Am. & E. Dec. in Eq., 281. It follows that an act done *after* the party's position has been taken or changed, will not avail as ground for estoppel, because it cannot have been relied upon. 4 A. & E. Dec. in Eq., 286. Whatever position defendants were induced to take was taken in 1874. It does not even appear that defendants have made any expenditures by way

of improving the premises set apart to them in the partition, either before or after the plaintiffs attained their majority.

It is further contended that plaintiffs are estopped by record in the case of Mary L. Barrett and the plaintiff by their guardian *ad litem* against William A. James, sr., resulting in a decree adjudging Mary L. Barrett and plaintiffs here entitled to the tracts which had been set apart to Charles S. Barrett in the partition as his heirs at law, and entitled to judgment against James for rents and profits during his occupancy of said premises. It appears that on January 26th, 1876, Charles S. Barrett mortgaged the said parcels of land to Thos. J. McCutchen & Co., to secure a debt of $608.44, which mortgage had been foreclosed and said parcels sold to Holmes and Durham, who afterwards conveyed to James. In 1887, the widow and children of Charles S. Barrett commenced the action against James, alleging that Holmes & Durham had bought said parcels under an agreement with Charles S. Barrett to convey to Mary L. Barrett and her children. as soon as the loan for the purchase money was repaid; that said James had bought with knowledge of said agreement, and that Mary L. Barrett and her children owned said land as tenants in common, and as heirs at law of Charles S. Barrett; the decree of Judge Kershaw, dated September 15, 1887, directed James to convey said parcels of land to Mary L. Barrett and the plaintiffs here, as heirs at law of Charles S. Barrett, and to pay them $859.68, excess of rents and profits during his possession, 1882 to 1887, over payments by him to Holmes & Durham, &c. In February, 1888, James made the conveyance as ordered by the Court, and plaintiffs have been in possession ever since.

That suit was not between the same parties and does not involve the same cause of action as the present suit. No right under the will was asserted in that suit. As already stated, their claim of the premises during the life of Jane Barrett, as heirs at law of Charles S. Barrett, was perfectly consistent with the present claim under the will. Judge

Kershaw expressly refrained from expressing any opinion upon the proper construction of the will of James Rembert or the effect of the partition.

The foregoing are the only matters relied on to show any confirmation of plaintiffs of the partition or estoppel to assert rights under the will. The partition, in so far as plaintiffs are concerned, cannot be sustained on the ground that it was a family settlement, as plaintiffs had no voice therein, and their rights under the will could not be varied in such a settlement unless they were properly represented in it. Plaintiffs have been diligent in the assertion of their rights, as no cause of action accrued to them until the death of the life tenant, and they brought this action within a few months of the life tenant's death.

In the settlement of this case the Court is disposed, as far as possible consistent with plaintiffs' rights, to preserve the possession of defendants or their privies of the parcels set apart to them in said partition, as they are bound as among themselves to abide by the same. The Court, however, is not quite satisfied with the rule adopted by the Circuit Court in holding that each acre is practically as good as another, and in making one acre the unit of value, as the testimony is very meagre on that subject. We, therefore, think that each parcel as set apart in the partition of 1874 should be valued by appraisers appointed for that purpose, and that plaintiffs should first be allotted tracts 1 and 3, now occupied by them, then to the extent necessary to give them four-tenths of the value of the whole tract of 889 acres, they should be allotted from tract No. 5, containing 168½ acres; then if this be still insufficient, any deficiency remaining should be made up to them by an assessment for equality of partition upon each parcel assigned to defendants in the partition, in the proportion which the value of their respective parcels bears to said deficiency, to be paid by defendants or their privies within such reasonable time as the Circuit Court may fix, and in default of such payment, plaintiff to have leave to apply to the Circuit Court for the proper relief.

After plaintiffs shall have thus received four-tenths of the whole tract of 889 acres, the defendants shall be entitled to the parcels respectively assigned to them in said partition. If the whole tract No. 5 be not required to give plaintiffs four-tenths of the whole 889 acres, the remainder should be partitioned according to law among the defendant children of Jane Barrett.

The judgment of this Court is that the decree of the Circuit Court is modified in the particulars named, and the cause is remanded for such further proceedings as may be necessary to carry out the views above announced.

MR. JUSTICE WOODS, *dissenting.* I concur in the construction given to the will of James Rembert in the opinion of Mr. Justice Jones, that his daughter, Jane Barrett, took a life estate with remainder to such persons *per capita* as should answer the description of heirs of her body at the time of her death. But I cannot agree that the plaintiffs are not bound by the terms of the deed for the partition of the land. Mrs. Barrett left surviving her as the heirs of her body six children, and the plaintiffs, the four children of Charles Barrett, a son who died before his mother. Under the will, therefore, the plaintiffs would be entitled to four-tenths of the land devised. The question is whether they have bound themselves by election to a different family arrangement. Obviously neither Charles Barrett in his lifetime nor the plaintiffs as his heirs were entitled to any portion of the land until the death of the life tenant, Jane Barrett. But during his lifetime and by an agreement between Mrs. Barrett and her children, which was also a mutual conveyance, all the land was actually partitioned among the children, except a tract of 168½ acres, known as lot No. 5, which it was covenanted "should be held by Mrs. Jane Barrett for her life, according to the terms of James Rembert's will; and in case there should be any persons living at her death who may be heirs of her body and not parties to the said deed, and entitled to an equal share in

14—70.

said tract of land under the terms of said will, then that said lot No. 5 shall be held as a common fund, out of which the interest of such heirs not parties to said deed shall be paid and satisfied, or for the reimbursement of any of the parties to said deed of settlement, whose possession may be disturbed for any loss from such disturbance by such heirs not in said deed provided for, or the reimbursements of any purchasers from any of the parties to said deed who may be subjected to loss by such heirs not in said deed provided for by the partition by said deed confirmed; and further, that at the death of Mrs. Jane Barrett, and all heirs of her body not parties to said deed shall be satisfied, anything which remains of lot No. 5 shall go as directed by said will for the whole tract."

Charles Barrett died in April, 1880. Since his death the plaintiffs, together with his widow, as his heirs at law, have used and enjoyed the land set apart to him, actively claiming title to it as their own by heirship from Charles Barrett. Mrs. Jane Barrett, the life tenant, died in 1901. The eldest of the plaintiffs attained her majority in 1893 and the youngest in 1899.

The plaintiffs took the full benefit of the family settlement for some years after they attained their majority by claiming and holding the land derived from their father under it. As his heirs they were his privies, and they elected to hold the benefits which accrued to them as such heirs. These benefits came through the deed. "No rule is better established than that one cannot claim under and against a deed or will." *Bailey* v. *Boyce,* 4 Strob. Eq., 91. It is true, the brothers and sisters of Charles Barrett would not have been entitled to the land set off to him even if the plaintiffs, as his heirs, had repudiated the family settlement and given notice that they would not hold the land set apart to their father under that instrument. But Mrs. Barrett had, by the family contract, surrendered and conveyed away her life interest in the lands therein set apart to her children for the benefit of each and every one of them. The consideration paid by

the mother for each of the children was as good and inured as much to their benefit as if each had surrendered an interest in the land set apart to Charles Barrett. This consideration paid by her to each child was sufficient to bind each of them and all who took the benefit of the consideration paid by her under or through any of them. The plaintiffs partook of the consideration by holding the land after the death of their father until the death of Mrs. Barrett, the life tenant. Having elected to take the benefits of the deed of conveyance of the life estate of their grand-mother, the plaintiffs should not be allowed to hold those benefits and after her death disavow the deed. The plaintiffs answer the description of the class of persons provided for in the family settlement who might be living at the death of Mrs. Barrett and be heirs cf her body and not parties to the deed, for whom the tract of 168½ acres was provided, and to this and to the land set apart to Charles Barrett, I think they should be limited.

I think the judgment of the Circuit Court should be affirmed.