### 7409

### SULLIVAN v. MOORE.

1. Issues.—Estoppel by conduct may be interposed as a defense to an action at law to recover possession of land.
2. Limitation of Estates—Estoppel.—A grantor conveying land without granting it to grantee, *to her and her heirs* in the premises or *habendum* but warranting it to her, *her heirs or assigns,* has a reversion in the land on the death of grantee, but where her deed is recorded, grantor is not estopped from claiming her reversion by rmaining silent while she saw her grantee and her grantees making such improvements on the lands as would reasonably be supposed to be consistent with a life possession, especially where the grantor is not informed before conveyance of the nature of the estate conveyed by her grantee and others.
3. Issues—Judgment.—The opinion in this case does not prevent the trial Judge from submitting to the jury the issue of mistake; but plaintiff is not entitled to enforce any judgment on the legal issues until the equitable issues are disposed of.
4. Rehearing refused.

Before. GAGE, J., Laurens, May term, 1908. Reversed.

Action by Rosalie A. Sullivan against John Moore. From judgment for defendant, plaintiff appeals.

*Messrs. Grier & Park, Richey & Richey,* for appellant, cite: *Essential elements of estoppel:* 16 Cyc., 734; 76 S. C., 573; 57 S. C., 507; 70 S. C., 206; 34 S. C., 464. *There is no estoppel by silence as to a matter of record:* 4 A. & E.

Dec. in Eq., 337; 77 S. C., 423, 26 S. E., 861; 93 U. S., 337; 150 U. S., 337; 8 U. S., 38; 13 U. S., 119; 57 S. C., 518; 13 S. C., 29; 31 S. C., 153; 60 S C., 216. *Permitting improvements herein made do not estop:* 16 Cyc., 116; 12 S. C., 422; 79 S. C., 411. *Each issue should be tried by proper Court:* 79 S. C., 473; 9 S. C., 147; 11 S. C., 447; 12 S. C., 108; 48 S. C., 497.

*Messrs. Simpson, Cooper & Rabb,* contra, cite: *Defense of estoppel properly sent to the jury:* 155 U. S., 327; 127 U. S., 253; 31 S. C., 155; 57 S. C., 517. *There was evidence to sustain verdict of estoppel:* 31 S. C., 155; 1 Bay, 241; 117 U. S., 29; 189 U. S., 260; 106 U. S., 456; 70 S. C., 195; 67 S. C., 432.

The opinion of the Court was filed July 5, 1909, but held up on petition for rehearing until

January 6, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action for the recovery of possession of a tract of land, containing ninety acres, the verdict was for the defendant, and the plaintiff appeals. There is no dispute that the plaintiff had title to a tract of land containing two hundred acres, of which the ninety acres in dispute is a part, on 26th August, 1886; that on that day she conveyed the entire tract of two hundred acres to Mrs. P. Alice Greer; that on 31st October, 1892, Mrs. Greer conveyed the ninety acres in dispute to Mrs. P. O. V. Martin; and that on 23d January, 1896, Mrs. Martin conveyed to the defendant, John Moore. The deed from Mrs. Sullivan, the plaintiff, to Mrs. Greer did not express either in the premises or in the *habendum* that it was a conveyance *to her and her heirs,* though the warranty was to her, "her heirs or assigns."

The case of the plaintiff rests on the proposition that the deed, with the word *heirs* so omitted, conveyed only a life estate to Mrs. Greer, and upon her death in November, 1906, there was a reversion to Mrs. Sullivan. This is the rule of the common law from which the Courts can not escape, though its operation nearly always results in the injustice of defeating the intention of the parties. The rule serves generally as a snare to those unlearned in technical law, and it would be difficult to suggest any reason for its continued existence; but it has been so long established in this State that the Courts can not now overrule the cases laying it down without imperilling vested rights. *McMichal* v. *McMichal,* 51 S. C., 555, 29 S. E., 403, and cases cited. It was made inapplicable to wills by the first section of the act of 1824, 6 Stat., 237, which enacts: "That no words of limitation shall hereafter be necessary to convey an estate in fee simple, by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied." The General Assembly has not, however, seen fit to extend this statute to deeds, and the Courts are powerless to do so.

Defendant does not deny that the deed from the plaintiff to Mrs. Greer conveyed on its face a life estate only, but he sets up two defenses. First, he alleges the parties to it intended that the deed from the plaintiff to Mrs. Greer should convey a fee simple title, and that it should be reformed accordingly. The second defense is, that the plaintiff is estopped by her conduct from setting up any claim to the land against the defendant.

The Circuit Court allowed evidence relating to both defenses to be adduced at the trial, but submitted to the jury the defense of estoppel only, reserving the issue of mistake and reformation to be passed on by the Court. Inasmuch, however, as the jury found for the defendant on the

issue of estoppel, it was considered unnecessary for the Court to decide whether the deed should be reformed.

The appellant's first contention is, that the issue of estoppel is equitable in its nature, and, therefore, should have been tried by the Court, and not submitted to the jury on the issue of legal title. The position is not tenable. The rule is thus stated in *Drexel* v. *Berney,* 122 U. S., 241, 253; 30 L. Ed., 1219: "Estoppels of this character, as distinguished from estoppels by record or by deed, are called equitable estoppels. It is not meant thereby that they are cognizable only in Courts of equity, for they are commonly enforced in actions at law, as was fully shown in *Dickerson* v. *Colgrove,* 100 U. S., 578 (25:618). But it does not follow because equitable estoppels may originate legal as distinguished from equitable rights, that it may not be necessary in particular cases to resort to a court of equity in order to make them available. All that can properly be said is that in order to justify a resort to the court of equity, it is necessary to show some ground of equity other than the estoppel itself, whereby the party entitled to the benefit of it is prevented from making it available in a court of law. In other words, the case must be one where the forms of law are used to defeat that which, in equity, constitutes the right. Such a case is one for equitable interposition." The right to prove against the plaintiff estoppel by conduct as a defense to an action to recover possession of land was recognized in *Marines* v. *Goblet,* 81 S. C., 153, 9 S. E., 803, on the authority of *Lessee of Tarrant* v. *Terry,* 1 Bay., 241.

The plaintiff next contends the Circuit Judge should have instructed the jury to find for the plaintiff on the ground that the plaintiff had established her legal title, and that no evidence had been offered tending to prove estoppel against her.

We are constrained to think there was no evidence of estoppel. The general principle upon which estoppel depends

is universally recognized. This statement of it has been adopted in our cases: "It is now a well established principle that when the true owner of property holds out another, or allows him to appear as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as. against such third party, the existence of the right or power which he caused or allowed to appear to be vested in the party making the sale." Bigelow on Estoppels, 434; *Dunlap* v. *Gooding,* 22 S. C., 550; *Chambers* v. *Bookman,* 67 S. C., 453, 46 S. E., 39. The defendant does not assert that the plaintiff made any representation or did any positive act tending to mislead him or Mrs. Martin, his grantor, in supposing that he was getting a fee simple title. The reliance is upon the alleged silence of the plaintiff, when she knew the plaintiff and others were purchasing the property. It is true the plaintiff was a near neighbor of the defendant, and of Mrs. Martin, and knew of the transfers of the land after they were made, but there is not a particle of evidence that she knew of the nature of the conveyances. Plaintiff's deed conveying only a life estate to Mrs. Greer was on record, and Mrs. Greer and those to whom she conveyed had a right to the possession of the land, and to convey as they saw fit for the term of her life. The mere fact that the plaintiff knew that deeds were made and the possession changed from time to time did not impose upon her the duty to warn those, who were making and receiving the deed and entering into posesssion under them, that the conveyances and possession could not extend beyond the life estate of Mrs. Greer. Plaintiff's deed to Mrs. Greer being on record, the law imposed no duty on the plaintiff to give additional notice to the public of its terms. She

could rest on the notice afforded by record, unless she knew the defendant or his grantor was about to purchase the land in good faith in the belief that he would get a fee simple title. Silence in the face of such knowledge would be evidence of estoppel. But there is not only no evidence that the plaintiff knew what estate Mrs. Greer and Mrs. Martin had undertaken to convey, but there is none that she knew conveyances were in contemplation, until they were actually executed.

It is true that plaintiff's husband witnessed the deed to the defendant, and there is evidence that he read it before execution, but there is no evidence that he, either before or after its execution, communicated to the plaintiff the fact that it purported to be a conveyance of the fee. On the contrary, the plaintiff testified she knew nothing of the conveyances until after their execution. "An act done after the party's position has been taken or changed, will not avail as ground for estoppel, because it cannot have been relied upon." *Parrott* v. *Barrett,* 70 S. C., 195, 206, 49 S. E., 563.

It is further charged, the plaintiff is estopped in that she, with knowledge of her rights, saw Mrs. Martin and the defendant improve the land by building and culture, and yet remained silent. The evidence on this point was to the effect that the dwelling house was unfinished when Mrs. Martin bought the land, and that her husband finished it, and put out about thirty fruit trees. But there was no evidence whatever of the extent of the work necessary to finish the house, nor of its cost. There was evidence that the defendant, Moore, had built on the place a small barn, costing from seventy-five to one hundred dollars, and had done work on the house to the extent of thirty to thirty-five dollars, and by culture, had increased the product of the land.

It is very manifest that the owner of a reversion or remainder is not put on notice, that the life tenant supposes he owns the fee by any small improvements made on

28—84

the land. He is bound to speak only when he has knowledge of improvements, which as a reasonable man, he must know the life tenant would not make, except under the belief that he held the fee. Such improvements as appeared in this case might well have been made for the enjoyment of a life estate. We cannot doubt that it would render land titles very insecure to hold that the owner of a reversion or remainder would be estopped, and lose his land if he did not take notice from such improvements that the life tenant had not availed himself of record notice of the title. The principle is thus well stated by Chancellor Harper in *Caldwell* v. *Williams,* Bail Eq., 174, 176: "It is argued on other grounds that the defendant ought to be compelled to execute the will of James Caldwell; for that he made improvements on the land, and Washington Williams, having stood by and acquiesced, it would now amount to fraud, to reclaim the land. The testimony of the witness was that Caldwell cleared about fifty acres of land for cultivation, and erected some inconsiderable buildings, a stable, and an addition to a barn. I cannot think that these improvements are of such a character as to show that Caldwell made them in confidence of being the owner. They are such as he would have been equally likely to make; with a view either to the present use of the land, or to the permanent ownership. If a man stands by and sees another build a house on his land, without giving notice, he will lose his land; but I am not satisfied that the same consequence would follow, if he should see him clear and cultivate it for a year or two, and erect such temporary buildings as might be necessary for the purpose of cultivation."

This case is to be distinguished from *Lessee of Tarrant* v. *Terry, supra; Marines* v. *Goblet, supra; Latimer* v. *Marchbanks,* 57 S. C., 278, 35 S. E., 481, and *Scarborough* v. *Woodley,* 81 S. C., 329, 62 S. E., 405. In those cases, the person whom the owner allowed to make the improvements, did not have a life estate, or other interest in the land to

which the improvements could be referred, and the owner was entitled to the immediate possession.

In *Grafton* v. *Patrick*, 77 S. C., 429, 58 S. E., 1, it was held that the mortgagee of a horse, who placed his mortgage on record, was not estopped from setting it up by the fact that he had been silent when he knew others were selling and buying the horse, for he might well assume that the dealings were with the notice which the record gave. So, in this case, the plaintiff had a right to assume that the transfers of the land were made subject to her reversion, as disclosed by the record; and the improvements were not inconsistent with the life estate held by those who made them.

The case is a hard one, but we cannot doubt that the Circuit Judge should have directed a verdict for the plaintiff on the legal issue. This action was commenced after 19th December, 1906, when rule 27 was made, and the result is, that the judgment on the legal issue must be rendered for the plaintiff, as if the Circuit Court had directed a verdict.

The equitable defense of mistake in the execution of the deed, upon which the defendant seeks reformation of the instrument, remains for trial by the Circuit Court entirely unaffected by this judgment.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.

PER CURIAM. January 6, 1910. Careful consideration of the petition for rehearing does not show that any material question of law or fact was overlooked or disregarded.

Throughout the trial in the Circuit Court, the issue of mistake in the deeds in that the words "her and her heirs" were omitted from the *habedum* and *tenendum* clauses, was treated as an equitable issue to be tried by the Court, after the legal issues, including the issue of estoppel, had been passed on by the jury. The question, therefore, is not material, whether as a general legal proposition the issue of mistake might not be submitted to the jury on

the general issue of title. In this case, it was reserved to be passed on by the Court, as an equitable issue, and the judgment of this Court leaves it entirely open. There is nothing in the judgment of this Court, which prevents the Circuit Court from referring the issue of mistake, or any other equitable issue to the jury.

The plaintiff is not entitled, under the facts of this case, to enforce any judgment on the legal issues until the equitable issues are disposed of.

It is ordered that the petition for a rehearing be dismissed, and that the order staying the remittitur be rescinded.