8419

## ATLANTA & CHARLOTTE AIR LINE RAILWAY CO. v. VICTOR MANUFACTURING CO.

1. RIGHT OF WAY—ESTOPPEL.—A DEED conveying to a railroad company a right of way "one hundred feet in width on each side of the track or roadway measuring from the center" conveys a right of way two hundred feet wide. But where the agent of the railroad company when obtaining the deed, made without consideration, honestly represents to grantor that it conveys a right of way only one hundred feet wide and it has been so treated by the parties and their grantees for a number of years by acts inconsistent with the

easement, the grantee of the railroad company is estopped from now insisting that the deed conveys a right of way two hundred feet wide.

2. Estoppel.—The Statute of Limitations do not apply to the defense of estoppel by misrepresentation.

3. Evidence—Right of Way.—In this case evidence that the right of way at other points was two hundred feet, and that the railroad company only cut out fifty feet on each side of the track, was admissible, because: First, it was admitted without objection; second, the record does not show the Court made or was asked to make any ruling as to it; third, it tended to disprove defendant's contention that as only fifty feet on each side was staked off on grantor's land only that width was intended to be conveyed.

Before Wilson, J., Spartanburg, April, 1911.   Reversed.

Action by Atlanta & Charlotte Air Line Ry. Co. and Southern Ry. Co. against Victor Manufacturing Co. Defendant appeals.

*Messrs. Haynesworth & Haynesworth,* for appellant, cite: *As to construction of deed:* 72 S. C. 228; 79 S. C. 281, 372; 82 S. C. 24; 81 S. C. 482; 43 C. C. A. 202; 1 Ky. L. R. 165; 2 Bail. 141; 45 Me. 9; 1 N. Y. 96; 8 Am. Dec. 287; 15 Vt. 519; 18 N. E. 435; 35 Ind. 387; 17 Fed. 119; 58 Me. 172; 10 N. W. 512; 17 Ency. 23-4; 71 N. Y. 194; 19 N. E. 141; 6 L. R. A. (N. S.) 281; 8 How, 290; 35 A. D. 370; 1 Rich. 16; 93 N. W. 859, 777; 79 S. W. 1098; 99 N. W. 725; 100 N. W. 37; 105 N. W. 367; 87 S. W. 1063; 77 S. W. 923; 35 N. Y. 116; 33 Am. Dec. 752; 35 N. W. 827; 9 O. C. D. 861; 8 S. W. 551; 40 A. 261. *Ambiguous descriptions:* 68 N. Y. 450; 35 A. D. 370; 37 Me. 379; 28 Kan. 825; 14 N. W. 599; 11 Gray 423; 51 Me. 575; 22 N. J. 161; 46 Tex. 605; 1 Rich. 16; 2 McM. 495; 37 S. C. 468. *Plaintiff is bound by representation of its grantor:* 43 C. C. A. 206; 2 Hill 657; 7 S. C. 47; 117 U. S. 96; 93 U. S. 326. *Statute of limitations:* 33 S. C. 28; 38 S. C. 496; 47 S. C. 126. *Possession is notice to purchaser:* 22 S. C. 32; 28 S. C. 58; 23 S. C. 490; 78 S. C. 499. *Plaintiff is*

*estopped by its conduct:* Bay 239; 31 S. C. 153; 67 S. C. 451; 72 S. C. 69; Bail. Eq. 174; 84 S. C. 432; 57 S. C. 267; 93 N. W. 1040; 37 S. C. 334.

*Messrs. Nicholls & Nicholls, Wm. M. Jones* and *Sanders & DePass,* contra. *Messrs. Nicholls & Nicholls* and *Wm. M. Jones* cite: *Construction of deed:* 78 S. C. 228.

*Messrs. Sanders & DePass* cite: *Evidence not objected to before trial Judge should not be objected to on appeal:* 53 S. C. 77; 60 S. C. 9; 62 S. C. 546; 75 S. C. 225. *Construction of deed:* 72 S. C. 228; 12 Stat. 439. *Possession is not notice to railroad company:* 72 S. C. 228; 63 S. C. 266.

January 18, 1913.    The opinion of the Court was delivered by

Mr. Justice Hydrick.   In 1871, Mrs. Bidsy McKittrick conveyed to the Atlanta & Richmond Air Line Railway Company a right of way through a tract of land owned by her, describing it as "all the land contained within one hundred feet in width on each side of the track or roadway, measuring from the center." The plaintiffs acquired this title.

In 1895, the defendant purchased a part of the McKittrick lands, lying on the railroad. From time to time thereafter, defendant erected fifteen cottages thereon, worth altogether about $8,000.00. They are located on a strip of land lying between lines 50 feet and 100 feet from the center of the railroad track. Three or four of them were built in the fall of 1895, eight or nine in 1899, and three in 1904. Plaintiffs made no objection either while they were being built or afterwards, until the commencement of this action, although they were in plain view of the railroad, and it could have been easily seen that they were within 100 feet of the track.

The controversy between the parties arose in 1901, and grew out of the submission to the defendant by the plaintiffs

of a draft of a written agreement for execution by defendant relative to an industrial sidetrack which had been built to serve defendant's cotton factory. To this proposed contract was attached a plat, on which the right of way of the railroad was shown as being 200 feet wide. For this reason, among others, defendant declined to sign the contract.

After some correspondence between the parties, in which their respective contentions as to the width of the right of way were stated, this action was commenced, in January, 1905, to enjoin defendant from further using the strip of land lying between lines 50 and 100 feet from the center of the railroad track, which is claimed by plaintiffs as part of their right of way, and to require the removal of the houses built thereon by defendant.

The defendant resisted the plaintiff's action on the ground, among others which need not be mentioned here, that, under the deed of Mrs. McKittrick, the right of way conveyed was only 100 feet wide; also, on the ground that plaintiffs are estopped from claiming a right of way of greater width, because the agent of the Atlanta & Richmond Air Line Railway Company, from whom they claim, represented to Mrs. McKittrick that the deed which she signed conveyed a right of way only 100 feet wide, and thereby induced her to sign the deed, she being unable to read or write, and being ignorant of the contents or true meaning thereof; and, also, because Mrs. McKittrick and her said grantee, and its successors and assigns, including the plaintiffs, and her grantees of the lands lying along said railroad and their assigns have, ever since the execution of said deed, mutually construed it as conveying a right of way only 100 feet wide, and they, and all of them, have, ever since, acted upon the belief that such was the true construction thereof.

Upon the testimony taken and reported by the master, the Circuit Court found against defendant on all points, and enjoined defendant from further trespassing upon the strip of land in dispute, and required the removal of the

houses built thereon by defendant. From this decree, defendant appealed.

The defendant's construction of the deed cannot be sustained. While the language used is, at first reading, a little ambiguous, careful scrutiny and analysis of it shows the intention,—(which, by the rules of construction, we must gather from the language used, if possible)—to convey a right of way 200 feet wide,—"100 feet in width on each side of the track." The same language was held, in *Spinning Co.* v. *Ry. Co.,* 81 S. C. 482, 62 S. E. 787, to convey an easement 200 feet in width.

The testimony shows that Col. Gabe Cannon, of Spartanburg, acted as the agent of the railroad company in obtaining the rights of way through Spartanburg county, and that he procured the deed from Mrs. McKittrick, and was one of the witnesses to the execution thereof by her. It also shows that Col. Cannon was a man of more than ordinary intelligence and of unquestioned honesty and integrity of character—a fact personally known to the writer of this opinion which is a pleasure to record. From this, plaintiffs argue that it was highly improbable that he represented to Mrs. McKittrick, as alleged by the defendant, that her deed conveyed a right of way 100 feet wide. Against this, we have the testimony of the other witness to the deed, who, though now a very old man, whose memory of recent events he himself admits is unreliable, swore that he remembered the occasion distinctly and that Col. Cannon did so advise Mrs. McKittrick. His testimony is corroborated by that of Mr. W. A. Pollard, a son of Mrs. McKittrick by a former marriage, who testified that he was present and heard what was said; and he himself (Mr. Pollard) acted upon it, and subsequently, and during the construction of the railroad, built a dwelling house for himself, on part of the same tract, within 100 feet of the railroad. The testimony shows that Mrs. McKittrick received no compensation for the grant of the right of way, and that the north

26—93

line of a right of way 200 feet wide would have passed
through her dwelling house, leaving two or three feet of it,
and all her front piazza and front yard in the right of
way. It is almost improbable that she would have know-
ingly granted a right of way which might have resulted in
serious inconvenience, not to say loss and damage, to her,
without compensation.

The testimony further shows that the railroad engineers
staked off only 100 feet—50 feet on each side of the track—
as the right of way through her land, and that during the
construction of the road, she confined the railroad people
strictly within the lines so staked off, refusing to allow them
to trespass beyond the lines so marked to cut timber, or for
any other purpose; that, if the stakes set to mark the right
of way were accidentally knocked down, during the work of
construction, she insisted upon having them reset, and the
railroad people complied with her demands; that, in con-
veying her lands, she conveyed to a line 50 feet from the
center of the track on each side; that she and her grantees
used and occupied and built upon the lands up to that line,
without let or hindrance or objection by the plaintiffs, or
their predecessors in title; that, from time to time after the
execution of her deed to the right of way, and beginning
as early as during the construction of the railroad, her
grantees built permanent structures within 100 feet of the
track, but none within 50 feet thereof, and that, at no time,
prior to about 1903, did the plaintiffs, or their predecessors
in title, object thereto; that, about the year 1899, the defend-
ant, having already built twelve houses within the 100-foot
limit, built some privies, for use in connection with those
houses, within the 50-foot line; that plaintiffs promptly
objected to the location of the privies, claiming that they
were on the right of way, and kept insisting that defendant
remove them beyond the 50-foot line, until it was done,
although, at that time, no objection was made to the dwell-
ing houses, which had been erected by defendant, some of

which had stood within the 100-foot line since 1895. On one occasion, a large cotton warehouse, built of concrete, was located just beyond the 50-foot line by one of the railroad's engineers, who was sent there to locate it by the railroad officials, after the owners had made the question with the local agent of the railroad as to the limits of the right of way, on the ground that, as they were erecting a permanent structure of considerable value, they wanted to be sure to put it entirely upon their own land. Besides this warehouse, there are, on the north side of the track, several stores and dwelling houses, all within the 100-foot limit, but none within 50 feet of the track.

Such continued use of the land within the 100-foot and up to the 50-foot line by the owners thereof for the erection of permanent structures, such as were incompatible with the easement, without objection by plaintiff, leads to the conclusion that the plaintiffs themselves must have thought, at that time, that their right of way was only 100 feet wide, for these structures were in plain view of the road, and any one passing could easily have seen that they were within 100 feet of the track. If these circumstances do not show the construction which the parties themselves gave the deed, immediately after its execution and from that time on, they certainly tend to show what they thought their rights were under it.

When we consider these circumstances, and the fact that Mr. L. W. Parker, a lawyer of unquestioned ability and honesty, swears that he thought, from his reading of the deed and from information gathered at and around Greer, where the land is situated, that the deed conveyed a right of way only 100 feet wide, and that, acting upon that belief, he allowed the defendant, of which he was then a director and its attorney, and later, in 1897, president and treasurer, to spend thousands of dollars in building houses upon said strip, we can easily understand how Col. Cannon, who was only a layman, might have told Mrs. McKittrick, in perfect

good faith, that the deed conveyed only 100 feet. Though he was honest, but mistaken in his opinion, the effect of his misrepresentation is the same in law as if it had been knowingly made, for the result to Mrs. McKittrick would have been the same. *Means* v. *Brickell,* 2 Hill 657.

The preponderance of the evidence is in favor of the conclusion that Col. Cannon did represent to Mrs. McKittrick that the deed conveyed only 100 feet, and the Court below erred in finding otherwise. This being so, it follows that plaintiffs are estopped from claiming a right of way of greater. width; for they have failed to prove that they are *bona fide* purchasers under the deed for value and without notice of the misrepresentation; and the burden of proving this was upon them. *Carr* v. *Mouzon,* 86 S. C. 461, 68 S. E. 661.

Aside from the misrepresentation, the facts above stated, and the circumstances of the use of the right of way beyond the 50-foot line by defendant, and others, ever since the execution of Mrs. McKittrick's deed, and the character of the structures placed thereon with the knowledge of plaintiffs, without objection by them, make out a clear case of estoppel. The character of the buildings forbids any other conclusion than that the railroad company must have known that the owners were building them under a belief that they had the right to do so. The company knew, or ought to have known, its own rights, for it had in its possession the McKittrick deed. In *Chambers* v. *Bookman,* 67 S. C. 452, 46 S. E. 39, the Court quoted with approval the following from the opinion in *Storrs* v. *Baker,* 6 Johns. Ch. 166; "The presumption is that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them; and nothing can be more liable to abuse than to permit a person to reclaim his property in opposition to all the equitable circumstances which have been stated upon the mere pretense that he was at the time ignorant of his title. Such an assertion is easily made and difficult to con-

tradict." In *Marines* v. *Goblet,* 31 S. C. 153, 9 S. E. 803, the Court approved the following as a proper instruction to the jury: "That if the jury find that the plaintiffs deliberately stood by for years and without objection saw Goblet or others buying the land in dispute, and making improvements thereon, under supposition that they had a good title, then the plaintiffs will now be estopped to set up their claim against them." See, also, *R. Co.* v. *Cotton Mills,* 82 S. C. 24; 61 S. E. 1089; *Sullivan* v. *Moore,* 84 S. C. 426, 65 S. E. 108, and cases cited.

The contention of plaintiffs that the misrepresentation cannot avail defendant because of the bar of the statute of limitations is untenable. The statute has no application to such a defense. *Amerker* v. *New,* 33 S. C. 28, 11 S. E. 386; *Jackson* v. *Plyer,* 38 S. C. 496, 17 S. E. 255; *Goforth* v. *Goforth,* 47 S. C. 126, 20 S. E. 40.

The exceptions assigning error in admitting evidence that the right of way through the lands of others was 200 feet wide, and that the railway company cleared only 50 feet on each side of the track through the lands of others though its right of way was 200 feet wide, cannot be sustained for these reasons: 1. Because the record shows that the testimony was admitted without objection. 2. Because it fails to show that the Circuit Court made, or was asked to make, any ruling as to its admission. 3. Because it was admissible, as it tended to disprove defendant's contention that, because only 50 feet on each side of the track was staked off through Mrs. McKittrick's land, only so much was intended to be conveyed as a right of way, and it tended also to rebut the contention that the right of way was only 100 feet wide.

Reversed.