0885

SECURITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF AIKEN, Respondent v. Kenneth M. JOHNSON, Bonnie S. Johnson, USLife Credit Corporation, and South Carolina Tax Commission, Defendants, of whom Bonnie S. Johnson is Appellant.

and

USLIFE CREDIT CORPORATION, Respondent v. Kenneth M. JOHNSON, Bonnie S. Johnson, South Carolina Tax Commission, Bankers Trust of South Carolina and Security Federal Savings and Loan Association of Aiken, Defendants, of whom Bonnie S. Johnson is Appellant.

Appeal of Bonnie S. JOHNSON

(Two Cases)

(353 S. E. (2d) 707)

Court of Appeals

*Richard E. Miley,* North Augusta, *for appellant.*

*Gasper L. Toole, III,* of Aiken, *for Security Federal Sav. and Loan Assn.*

*Warren A. Kohn,* Columbia, *for USLife Credit Corp.*

Heard Jan. 27, 1986.

Decided Feb. 23, 1987.

CURETON, Judge:

Respondent Security Federal Savings and Loan Association of Aiken (Security Federal) brought suit to foreclose a note and mortgage against property of appellant Bonnie Johnson whose signature had been forged on the instruments. The Master In Equity ruled that Johnson was equitably estopped to assert the forgery as a defense to the foreclosure suit. Johnson appeals. We reverse and remand.

Bonnie Johnson (wife) and her former husband, Kenneth Johnson (husband) are tenants in common of residential property previously used as their marital home and given to them by Bonnie's father. The husband and wife executed three valid mortgages on the property: a 1968 mortgage to Security Federal for $11,900.00, a 1978 mortgage to Banker's Trust for $18,000.00 and a 1981 mortgage to respondent USLife for $11,000.00

In 1980 the husband obtained a $50,000.00 loan from Security Federal using the marital residence as collateral. Through the use of an imposter, the wife's name was forged on the loan application, note, mortgage and disbursement check. From the loan proceeds, the husband paid off the 1968 Security Federal and the Banker's Trust mortgages totaling

$21,926.87. The husband received a disbursement check from Security Federal for the net proceeds in the amount of $26,842.83 made payable to him and the wife. The imposter forged the wife's name to the disbursement check and the husband utilized the proceeds for his sole benefit.

The facts are disputed as to when the wife first received notice of the $50,000.00 loan. Security Federal claims she should have been put on notice in early 1982 when the wife and husband filed a joint tax return showing 1981 interest payments to Security Federal of $4,820.00. The wife claims that she first learned of the loan in June 1983 when she and the husband filed for bankruptcy.

The record shows that Security Federal sent the husband and wife a certified letter in January 1983 advising them that the $50,000.00 loan was in arrears and that foreclosure was imminent. The wife signed for the letter but testified that since the husband opened all business correspondence, she never knew what was in the letter until the trial. In February 1983, Security Federal brought a foreclosure action on its mortgage. The process server testified that at the request of the husband, he served the wife's papers on the husband because the husband did not want the wife to know about the foreclosure. The husband later brought current the loan payments and Security Federal dismissed the foreclosure proceedings in March 1983.

The trial judge found that the wife knew of the forgery as early as the filing of the joint tax return in 1982, but concealed the forgery from Security Federal to protect her husband. He also found that such concealment prejudiced Security Federal because if Security Federal had known of the concealment in March 1983, it could have disallowed reinstatment of the mortgage then in foreclosure. He also found that had Security Federal known of the forgery at that time it could have taken steps against the husband to protect itself. The judge noted that in March 1983 the husband was "Sales Manager of Satcher Ford and by the time Security Federal learned of the forgery, he had left his job, filed bankruptcy, and he and [the wife] were involved in divorce proceedings."

To successfully assert the doctrine of equitable estoppel, Security Federal must show that it was without knowledge

or any means of knowledge of the facts and circumstances upon which it predicates its claim of estoppel, and that without the knowledge or means of knowledge, it was influenced by the wife's conduct or language or silence amounting to a representation of facts, or her concealment of material facts, and that in reliance thereon it changed its position to its injury. *Adams v. Adams,* 220 S. C., 131, 66 S. E. (2d) 809 (1951).

Security Federal concedes that it cannot predicate equitable estoppel on the wife's conduct prior to early 1982. We are unable to ascertain any detrimental change of position by Security Federal subsequent to early 1982. The only stated detriment Security Federal claims to have suffered is that if it had known about the forgery in March 1983, it would not have reinstated the mortgage. Additionally, Security Federal's Senior Vice-President answered yes to the following question asked by the bank's attorney: "In other words, you could have gotten some other property at that time if you had knowledge of the forgery, is that correct?" Later, the same officer admitted on cross-examination that the only property Security Federal was ever aware that the husband owned was his interest in the marital home. Moreover, the record reflects that the husband owned no property other than the marital residence that Security Federal could have taken as additional collateral.

The master also concludes that if Security Federal had known in March 1983 that the mortgage was a forgery, it could have taken steps to protect itself, but does not indicate what steps could have been taken. Presumably, the master reasoned that Security Federal could have required additional collateral for the loan or foreclosed its mortgage against the husband's one-half interest in the residence and obtained a judgment for any deficiency.[1] As we noted previously, the record indicates that the husband had no other property he could have mortgaged as additional collateral. Moreover, any judgment that Security Federal could have obtained against the husband would necessarily have either

---

[1] Security Federal states in its brief that if it had had knowledge of the forgery, "it could have foreclosed its mortgage before appellant and her husband went into voluntary bankruptcy in June 1983, which prevents any deficiency judgment against the parties."

been nullified by the bankruptcy proceeding filed by the husband in June 1983 or could have been excluded from discharge under provisions of 11 U.S.C.S. Section 523 (Law. Co-op. 1979).[2]

We therefore hold that even if the conduct of the wife is found to constitute concealment of a material fact, there has been no showing by Security Federal that it thereafter altered its position in reliance upon the concealment and to its detriment. Concealment of a material fact after the parties' positions have become fixed cannot be relied upon as a basis for estoppel. *Southern Coatings & Chemical Company, Inc. v. Belcher,* 274 S. C. 76, 261 S. E. (2d) 162 (1979); *Sullivan v. Moore,* 84 S. C. 426, 65 S. E. 108 (1910); *Parrott v. Barrett,* 70 S. C. 195, 49 S. E. 563 (1904). In. fact, it seems to us that Security Federal's position may have improved in March 1983 because the husband then paid past due payments.

Accordingly, the order of the trial court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SANDERS, C. J., and GOOLSBY, J., concur.

---

[2] 11 U. S. C. S. Section 523(a)(2) provides in pertinent part:

A discharge under section 727, 1141, or 1328(b) of this title [11 USCS Sections 727, 1141, or 1328(b)] does not discharge an individual debtor from any debt ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by — (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.